## IN THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA,

AT THE JUNE TERM THEREOF, HELD AT WHEELING, IN
THE COUNTY OF OHIO, COMMENCING ON THE
THIRD DAY OF JUNE, 1874, AND END-
ING ON THE TWENTY-FIRST
DAY OF JULY, 1874.

# WHEELING.

## LIST v. CITY OF WHEELING.

### July 13, 1874.

By an act of the Legislature, passed the 13th day of February,
1872, entitled, "An act to authorize the City of Wheeling to subscribe
to the capital stock of the Wheeling and Lake Erie Railroad Com-
pany," the Council of the City of Wheeling were authorized to sub-
scribe, in the name of the City, to the capital stock of said Company,
to an amount not exceeding $300,000.00, and pay the same in the
bonds of the City, *provided*, not less than three-fifths of the voters of
the City, who voted on the question, were in favor of the same. By
an act of the Legislature, passed February 15, 1872, entitled, "An act
to incorporate the Wheeling and Ohio Union Railroad Company," and
the thirteenth section thereof, the Council of said City, was authorized
to subscribe, in the name and on behalf of the City, to the capi-
tal of said Company, to an amount not exceeding $500,000.00,
and might pay the subscription in the bonds of the City, or

1874.
June Term.

7 501
34 368
7 501
35 613
36 300
7 501
38 107
7 501
43 96
43 106
7 501
50 441
7 501
59 692
7 501
f64 378

otherwise, *provided*, three-fifths of the voters of said City, voting on the question, voted for the subscription. Each of said acts authorized the Council of the City to submit to the voters, by an election, the question of the subscriptions. The Council, by two separate ordinances, submitted to the people the question of $300,000.00 subscription, under each act, the election to take place on the 1st day of June, 1872. On that day the election was duly held, and three-fifths of the voters of the City, voting at the election, voted in favor of each subscription. Afterward, on the 22d day of August, 1872, the people of the State adopted a new Constitution, which took effect on that day, by express provision of the Schedule thereto. The eighth section of the tenth article of the Constitution, so adopted, is in these words, viz: "No county, city, school district, or municipal corporation, except in cases where such corporations have already authorized their bonds to be issued, shall, hereafter, be allowed to become indebted in any manner, or for any purpose, to an amount, including existing indebtedness, in the aggregate, exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes, previous to the incurring of such indebtedness; nor without, at the same time, providing for the collection of a direct annual tax, sufficient to pay, annually, the interest on such debt, and the principal thereof, within, and not exceeding, thirty-four years: *provided*, That no debt shall be contracted under this section, unless all questions connected with the same, shall have been first submitted to a vote of the people, and have received three-fifths of all the votes cast for and against the same." After the adoption of the new constitution, and after it had taken effect, and on the 20th day of January, 1873, the Council of the City, by two separate ordinances, appointed three commissioners, (the same in each case,) to subscribe to the stock of each of said Companies, the said sum of $300,000.00, to be paid in the bonds of the City, and directing when such bonds should be paid by said commissioners. In each case the bonds to be payable in the City of New York, bearing seven per cent. interest, payable semi-annually, and the principal payable in thirty years. The Council failed to provide for the collection of a direct annual tax sufficient to pay, annually, the interest on the debt to be created by such subscription, or any part thereof. It is admitted that the subscription of both of said sums of $300,000.00, or either of them, would increase the debt of the City beyond the limit prescribed by the said eighth section of the tenth article of the Constitution. The making of each of said subscriptions were, by the Council, made subject to conditions. Before either of the subscriptions to the stock of said Companies were made, H. K. L., and others, resident voters, owners of property and tax-payers in said City, who sued in their own behalf as well as all other tax-payers of the City, except the defendants, filed in the circuit court of the county of Ohio, their bill of injunction against the said City, the members of the Council and said Commissioners,

enjoining and restraining them from subscribing to the stock of said Companies, or either of them, the amounts aforesaid, payable in the bonds of the City, or any part thereof, or to contract a debt therefor, or any part thereof.—HELD :

1. That the provisions of said acts of the Legislature, authorizing the Council of the City to subscribe stock to each of said Companies, conferred a power upon a public corporation of government which could be modified, changed, enlarged, restrained or repealed by the Constitution—the said acts, in neither case, importing a contract, within the meaning of the clause of the Constitution of the United States, prohibiting a state from passing a law impairing the obligation of contracts.

2. The ordinances submitting said subscriptions to the vote of the voters, and the mere vote of the prescribed number of voters for the subscription, did not, in, and of themselves, together, or separately, form such a contract with the Railroad Companies, as would be protected by the tenth section of the first article of the Constitution of the United States. Until the subscriptions were each made, the contract, in each case, was unexecuted.

3. The said eighth section of the tenth article of the Constitution of the State is not addressed alone to the Legislature, but is addressed to the several counties, cities, &c., and all other departments and persons in the State, and took effect and became binding and operative, so far as it is prohibitory and restrictive in its provisions, upon counties, cities, &c., on, and from the 22d day of August, 1872; and the action of the Council of the City in appointing commissioners to make said subscriptions, payable in the bonds of the City, was, under the circumstances, without authority of law, and for said subscriptions to be made for said amounts and a debt be thereby created therefor, or for any part thereof, payable in the bonds of the City, would be in violation of the said eighth section of the tenth article of the Constitution of the State.

4. Equity, in such case, has jurisdiction to perpetually enjoin the making of the subscriptions and the issuing of the bonds of the City.

5. The third section of the eleventh article of the State Constitution does not qualify or suspend the operation of said eighth section of the tenth article thereof.

6. The final decree, perpetuating the injunction, whereby the court orders and decrees "that the defendants, and each of them be, and they, and each of them, are, hereby, enjoined and restrained from contracting the debts and issuing the bonds in the bill of complainants mentioned, or either of them,

or any part thereof," should be construed to apply only to the ordinances of the Council of the City authorizing the subscriptions to be made to the stock of said Companies, and the making of the subscriptions for the said amounts, or any part thereof, and payment thereof, or any part thereof, in the bonds of the City, and the making of subscriptions to the stock of said Companies, or either of them, for the said amounts, or any part thereof, in such manner as to create a debt against the City under and according to said ordinances, or either of them. That the said perpetual injunction does not prohibit the City of Wheeling, or its Council, from hereafter contracting any such debt, and issuing the bonds of the City therefor, when done according to the provisions and within the limits, restrictions and requirements of said eighth section of the tenth article of the Constitution, and any act of the Legislature which may then be in force, not in conflict with, or contrariant to, said section and article.

7. The said eighth section of the tenth article of the Constitution was not intended to, and does not in anywise, interfere with, or prevent, the levying, collecting and expenditure, annually, by authority of law, by the proper legal authorities, of the several counties, cities, &c., taxes for county, city, &c., purposes, and to do and cause to be done, whatever is necessary or proper for that purpose, including the making, or causing to be made, contracts touching the expenditure of the taxes so levied and collected annually, and the like—And all this without a vote being taken, under the eighth section of said tenth article of the Constitution.

Appeal by George Baird, Andrew Wilson, John Butterfield, Porter Smith and others, defendants, from a decree of the circuit court of Ohio county, rendered May 7, 1873, perpetuating an injunction, theretofore granted, by the judge of said circuit court.

The complainants below were Henry K. List and a large number of other citizens and tax payers of the city of Wheeling, suing for themselves and on behalf of all the other taxpayers of said city, (except the defendants in the suit,)—and the respondents the said City of Wheeling, the members of the First and Second Branches of the City Council of said City—setting out their names—George W. Jeffers as Mayor of said City, and George Adams, Josiah F. Updegraff and Benjamin Fisher, who had been, theretofore, appointed by said Council, for and on behalf of said city of Wheeling to

make certain subscriptions to "The Wheeling and Lake Erie Railroad Company," and to the "Wheeling and Ohio Union Railroad Company," in accordance with certain conditions set forth in the ordinance appointing them commissioners. The material facts will be found set forth, at length, in the opinion of the Court.

The Hon. Thayer Melvin, judge of said circuit court, presided at the hearing below.

*C. W. B. Allison* for the appellants.

*Daniel Lamb* and *Asbury J. Clarke* for the appellees.

HAYMOND, PRESIDENT:

This is a bill of injunction in which the circuit court of the county of Ohio perpetuated the injunction. On the 13th day of February, 1872, the Legislature of this State passed an act entitled, "an act to authorize the city of Wheeling to subscribe to the capital stock of the Wheeling and Lake Erie Railroad Company." This act provides that the Council of the City of Wheeling is authorized, and empowered, to subscribe, in the name and on behalf of the City, to the capital stock of a Company authorized to construct a railroad from a point at or near said City, in the county of Belmont in the state of Ohio, to Toledo in the county of Lucas, Ohio, to an amount not exceeding $300,000, on such terms as they may deem advisable; and such Council may pay such subscription by issuing the bonds of said City or otherwise, and may provide, by taxation or otherwise, for the redemption of such bonds, and payment of interest on the same; that before making such subscription, the Council of the City shall cause a vote to be taken upon the question, at the several places of voting in the City, at any general or special election, ordered by them for that purpose, notice of which shall be published in each daily newspaper in the City, for fifteen days, at least, before the poll is to be taken, at which election all persons having the right to vote for mayor of said City shall be entitled to

64

vote. The poll shall thereupon be taken and the result ascertained under the regulations prescribed for city elections. On the ballot used in the poll there may be written or printed thereon the words, "subscription" or "no subscription" or any mode that will show how the voter intends to vote on the question proposed. If it appear by the poll that not less than three-fifths of the voters of the City, who voted upon the question of the proposed subscription, are in favor of the same, the subscription may then be made, to the amount proposed or any less amount ; that the right to the stock subscribed for under the preceding sections, or any special act of the Legislature thereafter passed, shall be vested in the City of Wheeling, and the Council thereof shall have authority, from time to time, to appoint a proxy to represent the said stock in the meetings and elections to be held by the stockholders of the Company. The dividends on the stock shall be collected as the city council may order, and paid into the city treasury ; but before the subscription authorized by this act shall be made, such Railroad Company shall give a guarranty to the Council of the City that it will construct its road into the City, and make its eastern terminus, and its depot ground and buildings thereon, within the corporate limits of the City cast of the east channel of the Ohio river ; that the Council of the City of Wheeling is hereby authorized to grant to said Railroad Company, which may construct the road aforesaid, the use of any of the streets and alleys, or public grounds within said City, for its track upon such terms and restrictions as it may prescribe.

On the 15th day of February, 1872, the Legislature passed an act entitled, "an act to incorporate the Wheeling and Ohio Union Railroad Company." The first section of this act provides that Henry K. List and a number of others, therein named, or any three or more of them, and their associates, successors and assigns, and all who shall become stockholders, when one thousand shares of the capital stock of the Company shall

have been subscribed as thereinafter provided, and made a body politic, by the name, style and title of the "Wheeling and Ohio Union Railroad Company;" and that said subscription shall be made in good faith, within three years from the passage of this act. The second section of this act authorized the Company to locate, construct and maintain a railroad from some point within the City of Wheeling, across the Ohio river to the State of Ohio, and is also authorized to locate, construct and maintain its road, or any branch thereof, on or over any street or ally within the City of Wheeling, &c., with a proviso not necessary to notice here. The third section of the act grants authority to the Company to erect, construct and maintain a railroad bridge across the Ohio river at any point within said City of Wheeling it may select, &c. The thirteenth section of the act provides that the Council of the City of Wheeling may subscribe in the name and on behalf of the City of Wheeling to the capital of said company, to an amount not exceeding $500,000.00, and may pay for its subscriptions in the bonds of said City or otherwise: *Provided*, that before any such subscriptions shall be made, the maximum amount thereof shall be fixed, and the question whether such subscriptions shall be made or not, shall be submitted, under suitable regulations, to be prescribed by the Council of said City, to a vote of the persons authorized to vote for members of the Council of said City, and unless three-fifths of the votes cast shall be in favor of making such subscription, the same shall not be made. The fifteenth section of the act provides, among other things, that if the said City of Wheeling shall make such subscription it is authorized and empowered to issue coupon bonds to an amount sufficient to pay for its subscription, payable at such time and place, and at such rate of interest, not exceeding seven per cent., as the Council of the City shall direct; and to secure the payment of the principal and interest of the bonds issued, the said City may cause

to be executed, in its name and on its behalf, a proper deed of trust on its stock in said Company. There are other sections in this act not necessary to refer to here as they do not bear on the questions involved in the cause.

The first section of an act of the Legislature passed March 1, 1871, provides that any railroad company that may be incorporated by the laws of the State of Ohio, for the construction of a railroad from the City of Wheeling, or from the western bank of the Ohio river, opposite to said City, northwestwardly through the state of Ohio, in the direction of New Philadelphia and Toledo, or other point on or near Lake Erie, shall have power to extend its road across the Ohio river at Wheeling Island, and to bridge either or both branches of the Ohio river to such point within the City of Wheeling, as it may deem advisable. The second section of this act gives to such railroad company the same powers, privileges and franchises, in this State, for the purpose of constructing, maintaining and operating its road in this State, and erecting and maintaining bridges, &c., as are conferred upon the company by the laws of Ohio, and makes the company, as as far the road is in this State, a West Virginia corporation and subject in the exercise of is powers, &c., and to be governed by the general railroad laws of the State. Acts of 1871, 248.

The ninth section of an act of the legislature of the State of Ohio, entitled, "An act to authorize the consolidation of railroad companies of states adjoining, in certain cases, and authorizing railroad companies of this state to extend their roads into adjoining states," provides that any railroad company now organized, or which may hereafter be organized, in this state, for the purpose of constructing a railroad to the boundary line of that state, shall be authorized to extend its road into and through any adjoining state under the regulations which may be prescribed by such adjoining state, and the rights, powers and privileges of such company, over such extension, in

the construction and use of such road, in controlling the property and applying money and assets thereon, shall be the same as if said road had been built wholly within the state of Ohio. See this act copied into Ohio Railway Report of 1870, page 64.

The present Constitution of this State was adopted on the 22nd day of August, 1872, and the sixth section of the Schedule thereto, provides, that if the Constitution and Schedule are adopted by the voters, the Constitution and Schedule should be operative and in full force from, and including the fourth Thursday, (the 22nd day) of August, 1872. The eighth section of the tenth article of the Constitution is in these words, viz: "No county, city, school district or municipal corporation, except in cases where such corporations have already authorized their bonds to be issued, shall hereafter be allowed to become indebted, in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate, exceeding five per centum on the value of the taxable property therein to be ascertained by the last assessment for state and county taxes, previous to the incurring of such indebtedness; nor without, at the same time, providing for the collection of a direct annual tax, sufficient to pay, annually, the interest on such debt, and the principal thereof, within, and not exceeding, thirty four years : *Provided*, that no debt shall be contracted under this section, unless all questions connected with the same, shall have been first submitted to a vote of the people, and have received three fifths of all the votes cast for and against the same."

On the 30th day of April, 1872, the Council of the City of Wheeling, in pursuance, and by authority of, the said act of the Legislature of 13th of February, 1872, passed an ordinance composed of some five sections, with a preamble, in which it is expressed as the opinion of said Council that a subscription should be made on behalf of the City to the capital stock of the said Wheeling and Lake Erie Railroad Company to the amount of

$300,000, *provided*, said Railroad Company shall give sufficient a guarantee to the Council of the City that it will construct its road into the City and make its eastern terminus, and have its depot ground and buildings thereon, within the corporate limits of the City, east of the east channel of the Ohio River. And for the purpose of taking the sense of the qualified voters of the City, upon the question whether they would authorize a subscription to be made by the Council of the City, in the name and on behalf of the City, to the capital stock of said Lake Erie Railroad Company, to the amount of $300,000, the Council in said ordinance provided, that polls should be opened and an election held for that purpose on the 1st day of June, 1872. All this was done in due form and in accordance with the provisions of said act of 15th of February, 1872. Under and in pursuance of said ordinance an election was duly held at the time appointed, and at that election more than three fifths of the voters voted in favor of said subscription.

On the 23rd day of April, 1872, the Council of said City, under and by authority of the said act of the Legislature of the 15th of February, 1872, passed an ordinance of seven sections, with a preamble, in which the Council expressed the opinion that a subscription should be made in the name and on behalf of the City of Wheeling to the capital stock of said Wheeling and Ohio Union Railroad Company to the amount of $300,000, and in due form submitted the same to the sense of the qualified voters of said City, at an election to be held in said City on the 1st day of June, 1872,—the same time as the election before mentioned.

The election was duly held, at the time appointed, and more than three fifths of the qualified voters voted in favor of this subscription also. This was all done, so far as appears, in conformity with the provisions of the last named act.

On the 20th day of January, 1873, the Council of the

City passed an ordinance, entitled: "An ordinance authorizing and directing a subscription for, and on behalf of, the city of Wheeling to the capital stock of the Wheeling and Lake Erie Railroad Company." The first section of this ordinance ordained that George Adams, Josiah F. Updegraff and Benjamin Fisher, as commissioners in the name and on behalf of the City of Wheeling, shall subscribe for and take six thousand shares of the stock of the Wheeling and Lake Erie Railroad Company on the terms and conditions in said ordinance set forth. By these terms and conditions the said Company is required to construct its road into the City, and make its eastern terminus and have its depot grounds and buildings thereon, within the corporate limits of the City, east of the east channel of the Ohio River. The proceeds of the subscription are required to be expended by the company upon its depot grounds and buildings, at its said eastern terminus, and upon that part of the road between said depot and the point of crossing the Pittsburgh, Cincinnati and St. Louis Railroad in Ohio, including payments from its subscription of stock to the Wheeling and Ohio Union Railroad Company, as provided in said ordinance. The subscription to the stock of the Company is made payable in the bonds of the City of Wheeling as therein, and may thereafter be, provided, by further ordinances, at the par value thereof, with the accrued interest thereon, and shall not be paid by said commissioners any faster than the private subscriptions to the stock of the Company are required to be paid, under and by virtue, of the laws of the state of Ohio, and only as the Company shall progress in the construction of their road eastward of said point of crossing the Pittsburgh, Cincinnati and St. Louis Railroad, to and including the depot and buildings aforesaid in the City, on the monthly estimates of the chief engineer of the actual cost of the same; and no instalment to be paid until a like amount shall be expended and

actually paid by said Wheeling and Lake Erie Railroad Company for their depot grounds and buildings in the City and upon their subscription to the capital stock of the Wheeling and Ohio Union Railroad Company, exclusive of the first instalment thereon of ten per cent. As a guarantee of the performance of these conditions it was further ordained that said subscription should not be made by said commissioners until the Wheeling and Lake Erie Railroad Company should comply with the following preliminary requisitions: ·

"Said railroad company shall definitely and permanently, locate, and secure, by written contract or otherwise, suitable depot grounds for its eastern terminus within the City of Wheeling, to be approved by the City Council, and shall file with the city clerk a written instrument, under the signature of its president and secretary, and the official seal of the Company, giving the assent of said Railroad Company to this ordinance, and such additional ordinances as may be hereafter passed to more effectually carry this ordinance into effect, by providing for the issue and redemption of the bonds which may be issued by the City of Wheeling to pay its subscription herein provided for; and especially agreeing, upon the part of said Wheeling and Lake Erie Railroad Company, that it will construct its road into the City of Wheeling and permanently make its eastern terminus, have its depot grounds and buildings thereon within the corporate limits of the said City, east of the east channel of the Ohio River; and that it will erect and maintain within said City, east of the east channel of the Ohio River, suitable buildings for the accommodation of passengers and freight and engine house or houses, of sufficient capacity to shelter its engines upon the eastern division of its road when not running on the road and machine shops of sufficient capacity at least for the ordinary repairs to its rolling stock on its eastern division." "The said Wheeling and Lake Erie Railroad Company, in order to aid and secure a proper

connection between its road in the state of Ohio, and its eastern terminus aforesaid, east of the Ohio River, is required to take and subscribe for four thousand shares of the capital stock of the Wheeling and Ohio Union Railroad Company, the latter Company assenting thereto, which subscription shall be payable in cash, and not otherwise, and at least ten per cent. thereof shall be actually paid thereon." It was further ordained that said bonds shall be "payable thirty years after date, in the city of New York, with interest payable at the same place, at the rate of seven per cent. per annum, payable semi-annually, free from city taxation; and for said interest, coupons shall be attached to each of said bonds, and shall be delivered on demand of said Company, subject to the provisions of section one—said commissioners first detaching therefrom and cancelling, any coupons which may have matured."

On the 20th day of January, 1873, the council of the City passed another ordinance, entitled "An ordinance authorizing and directing a subscription for and on behalf of the City of Wheeling, to the capital stock of the Wheeling and Ohio Union Railroad Company." By the first section of this ordinance, it was ordained, "that George Adams, Josiah F. Updegraff and Benjamin Fisher, as commissioners in the name and on behalf of the City of Wheeling, subscribe and take three thousand shares, of $100 each, of the capital stock of the Wheeling and Ohio Union Railroad Company, conditioned for payment as therein provided. The second and third sections of this ordinance prescribe the terms and conditions upon which the subscription shall be made. This subscription, this ordinance provides, shall be paid in the bonds of the City, at the par value thereof, and accrued interest thereon, &c., and the bonds shall be payable thirty years after date in the city of New York, with interest payable at the same place, at the rate of seven per cent. per annum—payable semi-annually, &c Each of

the two named ordinances took effect and was in force from the passage thereof. The Council did not pass any ordinance providing for the collection of a direct annual tax sufficient to pay, annually, the interest on such debt, and the principal thereof within, and not exceeding, thirty-four years.

Under these circumstances and facts, Henry K. List and a large number of other persons owning property in the City of Wheeling, subject to taxation by the corporate authorities thereof, who sue as well on behalf of themselves as all other persons owning property in the City of Wheeling, subject to taxation by the said corporate authorities, thereof, except the defendants named, presented to the judge of the circuit court of the county of Ohio, in which said City is, a petition, prayer and bill, in which is set forth the said two acts of the Legislature of the 13th and 15th of March, 1872, the said ordinance and facts hereinbefore stated, and in which it is also alleged and averred, substantially, that the said two acts, although otherwise separate and distinct, are parts of the same scheme or plan of improvement, having in view the construction, maintenance, and working of a continuous line of railway between a depot on the east side of the east channel of the Ohio river, in the City of Wheeling, and Toledo, in the county of Lucas, in the State of Ohio. That the two subscriptions authorized by these several acts are so mutually dependent upon each other, that no authority has been given to make either separately, or rather neither can be made unless the objects of both acts shall be accomplished; that the city of Wheeling had not before the 22d day of August, 1872, being the fourth Thursday of that month, authorized it bonds to be issued for or on account of the before-mentioned subscriptions, or either of them, or any part thereof; and that the indebtedness of said City on the said 22d day of August, 1872, amounted to, and still is, not less than $641,000; and that the value of the taxable property within the limits of

the said City, ascertained by the assessment for state and county taxes for the year 1872, is less than $12,206,850, and five per centum thereon would be less than $610,-343; and, therefore, they say, that if either or any part of the said subscriptions, on behalf of the City of Wheeling be made, the said City would thereby become indebted, after said fourth Thursday of August, 1872, to an amount, including its existing indebtedness, in the aggregate, largely exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes, previous to the incurring of said indebtedness; that the plaintiffs have good reason to believe that the said ordinances authorizing said subscriptions will be carried into execution; that the Wheeling and Lake Erie Railroad Company have not given, and are incapable, under their charter, of giving, to the Council of the city of Wheeling, the guarantee required by the third section of the said act of 13th of February, 1872; that the said Railroad Company will construct its road into said City, and make its eastern terminus and have its depot grounds and buildings thereon, within the corporate limits of said City, east of the east channel of the Ohio river; that they, (plaintiffs) are, respectively, owners of real and personal property in the said City of Wheeling, subject to taxation by the corporate authorities thereof, and are residents and voters of the City, and that by reason of the unlawful subscription proposed to be made and debts proposed to be contracted on behalf the said City, by the ordinances aforesaid, they and their property will be subject to heavy burdens, contrary to the Constitution and laws of the State. The city of Wheeling, the Mayor and Council thereof and the said commissioners and others are made defendants to said bill. The bill then prays that the City of Wheeling, and the other defendants, by injunction, be enjoined and restrained from making the subscriptions, contracting the debts and issuing the bonds aforesaid, or either or any part thereof.

The judge of said circuit court granted the injunction prayed for, after notice to the defendants. An official copy of the charter of the Wheeling and Lake Erie Railroad Company is filed with the bill as exhibit No. 1, which was filed with the secretary of the state of Ohio on the 6th day of April, 1872, showing the capital stock of the Company to be $500,000.

At rules on the first Monday in March, 1873, the plaintiffs filed their bill with the order of injunction endorsed thereon in the clerk's office of the circuit court of Ohio county. George Baird, Andrew Wilson, John Butterfield, George Forbes, Porter Smith and Jacob Altmyer, filed their answer to the bill, in which there is a demurrer, and to this answer there was replication. None of the other defendants answered. The defendants who answered admit most of the material allegations of the bill. But they deny the allegation in the bill that said Wheeling and Lake Erie Railroad Company has no authority of law to construct its said railroad into said City of Wheeling and make its eastern terminus as required in the ordinance aforesaid. They deny that the capital stock of the Wheeling and Lake Erie Railroad Company is but $500,000—as alleged in the bill, and say that the exhibit No. 1 filed by plaintiffs with their bill, is but a copy of the original certificate of incorporation under the general laws of the state of Ohio, defining the powers and regulating railroad companies, thus chartered under them; that under and by virtue of said laws of the state of Ohio the capital stock of said Company has been increased from the amount named in the original certificate to $4,000,000—which change was made on the 29th day of March, 1872, as shown by the subsequent certificate and amended charter, an official copy of which is filed with the answer marked A. For the powers of said Company, by virtue of its charter in Ohio, these defendants refer the court to the general corporation laws of that state. As to the powers of said Company to extend

its road into the City of Wheeling they refer to the said act of the Legislature of this State passed March 1, 1871. They also say that the extension of said Company's road into the City of Wheeling would be highly beneficial, and promotive of the objects of the Company. They deny that the existing indebtedness of the City of Wheeling amounts to $641,000.00, or to five per cent. of the value of the taxable property of said City as alleged in the bill, and particularly after applying the moneys on hand and in the sinking fund for the redemption of portions of its outstanding bonds; but they admit that if the amounts proposed to be subscribed by said ordinances to said Railroad Companies, or either of them, should become an indebtedness of the City by reason of said Railroad Companies or either of them, complying with the terms and conditions of said ordinances, within a reasonable time, say within the next year, that the indebtedness of the City would then (including the other indebtedness,) exceed five per centum of the value of taxable property therein as assessed for taxation for state purposes—They say they do not know whether said ordinances will hereafter be carried into execution or not, but they suppose it will depend on the financial ability and action of the said Wheeling and Lake Erie Railroad Company by giving its assent to the ordinances, and the guarantee required by the ordinance authorizing the subscription to its stock—They say that that ordinance, as well as the other authorizing the subscription of stock, contemplate the passage of an additional ordinance by the said Council before any subscription is made providing for a direct annual tax sufficient to pay annually the interest on the debt to be contracted by the City on account of said subscription and the principal thereof in thirty-four years; that such an ordinance has not been passed, but was pending before the City Council when said two ordinances authorizing subscriptions of stock were passed; but no action has been had thereon since. But whether such an ordinance is passed or not they insist is not material

to this cause. They admit that the guarantee required by the act of the Legislature has not yet been given, and they do not believe any subscription will be made until such guarantee is given.

At April rules 1873 the cause seems to have been set for hearing, and at a circuit court held for the said county of Ohio on the 7th day of May, 1873 the cause came on, by consent, to be heard on the bill, exhibits filed therewith, the summons and return, the former proceedings and orders therein, the answer of defendants Baird, Wilson, Butterfield, Forbes, Smith and Altmyer, the exhibits filed therewith, and replication to the answer, and the court adjudged, ordered and decreed that the defendants and each of them, be and they are, hereby, perpetually enjoined and restrained from contracting the debts and issuing the bonds in the bill of complaint mentioned, or any or either of them, or any part thereof, and that the plaintiffs recover their costs in this behalf expended, from the defendants.

The summons in the cause seems to have been executed and so returned to the clerk's office at March rules when the bill was filed. From the record there might be some question as to whether this cause was so matured, at its final hearing, as to authorize the final decree if it were otherwise correct; or as to how it was heard. But as the parties seem to desire a decision of the cause upon its merits, I will consider it as though it was heard upon the bill and exhibits, the answer and exhibits therewith filed and replication thereto, bill taken for confessed as to all the defendants who did not answer, and by consent. This I think is authorized by the time at which the bill was filed and the right of the court below to correct the proceeding, had at rules, in order to hear the same and make final decree therein. A critical examination of the record shows that at the hearing the bill might have been taken for confessed as to all the defendants, except those who answered; but I do not deem it material to stop to discuss this question, as it can make

but little difference, if any, in the final result to be arrived at.

The *first* question to be considered in this case is what is the true meaning and intent of the eighth section of tenth article of the Constitution? Does it operate so as to affect, invalidate, or repeal or modify the said acts of the Legislature of the 13th and 15th day of February, 1872, before cited, or any part thereof? Or is it simply addressed, not to past legislation, but to the legislature created by the Constitution? I have already quoted at large the said eighth section of the tenth article of the Constitution. "The object of construction, as applied to a written constitution is, *to give effect to the intent of the people in adopting it.*" It is a rule of construction that the whole constitution is to be examined, with a view of arriving at the true intention of each part: This is because the instrument is adopted by the voters as a whole, and an article or section standing by itself, which might seem of doubtful import, may yet be made plain, by comparison with other clauses of the instrument." "A constitution should operate prospectively only, unless the words employed show a clear intention that it should have a retrospective effect. And the same rule applies to statutes." Cooley's Con. Lim. 62. The administration of public justice is referred to the courts. To perform this duty, the first requisite is to ascertain the facts, and the next to determine the law that is applicable. The constitution is the fundamental law of the state, in opposition to which any other law must be inoperative and void. If, therefore, such other law seems to be applicable to the facts, but on comparison with the fundamental law it is found to be in conflict, the court in declaring what the law of the case is, must necessarily determine its invalidity, and thereby, in effect, annul it. It was admitted in argument that the said acts of the 13th and 15th of February, 1872, so far as any part thereof applies to the City, were not in violation of the Constitution of 1863, which was in force at their passage and that said acts

were in force and valid up to the time the present State Constitution took effect, and are still in full force, unless repealed or modified by some provision of the present Constitution or some act of the Legislature, passed since the adoption of the present Constitution. All acts of the Legislature in force at the time the Constitution took effect which are plainly in conflict with the Constitution, or any of its parts, when rightly construed, are modified or repealed, to the extent of such conflict. All acts authorized to be done by laws in force prior to, and at the time of the adoption of the Constitution, which are clearly forbidden to be done by the Constitution, must be considered as prohibited, provided the obligation of a contract will not thereby be impaired.

It cannot be ascertained from the face of the acts of the Legislature in question, whether they are in conflict with the eighth section of the tenth article of the Constitution or not, except that they do not contain the constitutional limit as to amount of debt, the provision for payment of interest and principal, &c., in thirty-four years ; or whether the authority given in said acts or either of them, to the City of Wheeling, or her Council, to subscribe for, and on her behalf, to, or for, the stock of said Railroad Companies, in said acts, or either of them, mentioned, and thereby create a debt or debts to the amount of three or six hundred thousand dollars, or any greater or less sum, is prohibited by said section and article, except as aforesaid. This depends, upon whether said section eight of the tenth article operates as a prohibition upon the City upon the value of the taxable property within the City at the last assessment, at the time of the subscriptions and issuing of the bonds of the City were directed or authorized by the Council to be made, and intended to be made, and upon the then existing debt of the City.

It is admitted, by the answer in the cause, that if the subscriptions were made, or either of them, and the bonds of the City issued to the amount of either sub-

scription, that the debt of the City would, thereby, be increased beyond the amount specified in said eighth section of the tenth article of the Constitution. For the purposes of this suit it must be considered, therefore, that if said section of said article is addressed and applies to the City of Wheeling, and all others, and is not simply prospective and addressed to the Legislature, alone, then the making of said subscriptions, or either of them, in the bonds of the City, as authorized or directed by the Council of the City, is prohibited by said section and article of the Constitution, and will not be allowed. And, also, though the making of a part of the amount of said subscriptions, or either of them, or any part thereof, would not increase the debt of the City beyond the amount specified in said section, still the subscriptions, or either of them, or for any part thereof, cannot be allowed, and are unauthorized without the Council of the City providing, at the same time, for the collection of a direct annual tax, sufficient to pay annually, the interest on the debt, and the principal thereof, within, and not exceeding thirty-four years. This, it is admitted, was not done, and it is claimed, by defendants, that it was not necessary—that said section of the said article of the Constitution does not, in anywise, affect the authority of the City or its Council, under said acts, or either of them, so far as they apply to the City or its Council. Is the eighth section of said tenth article of the Constitution addressed to the City, &c., or is it directed to the Legislature, only? It will be found, on an examination of the Constitution, that many of its sections are expressly directed to the Legislature. Such sections, under the weight of judicial decisions upon that subject, do not apply to or affect laws passed, and in force at the adoption of the Constitution, in so far as they are directed to the Legislature, as the Legislature therein named is held to mean, the Legislature created by that constitution.—*Cass v. Dillon,* 2 Ohio St., 607 ; *State*

66

*ex rel. Mo. & Miss. R. R. Co., v. Macon Co. Ct.*, 41 Missouri, 453 ; *Slack v. Maysville and Lexington Railroad Company*, 13 B. Monroe, (Ky.,) 1 ; Cooley's Con. Lim., 62, note 2, and authorities there cited. The language of the said eighth section is, "No county, city, school district, or municipal corporation, except in cases where such corporations have already authorized their bonds to be issued, shall hereafter be allowed to become indebted," &c. Can it be said, with any plausibility, that these words are directed only to the Legislature? They are directly, and expressly directed to the counties, cities, &c. Such is the plain language, and there is no room for doubt; and all persons, officers, and all departments of the government, are bound by the prohibition. The Legislature may legislate in aid of this section, but not in violation of it. The question presented here is not similar to those presented in the cases in Ohio, Kentucky, Missouri, &c., to which I have referred specially. There the sections of the Constitution drawn in question, were expressly and clearly directed to the legislature. The question presented in this case, is more like the question presented in the case of *Aspinwall v. Com. of Davies Co.*, 22 Howard, (Sup. Ct. U. S.,) 364 though the constitutional provision in that case is not in the precise phraseology of the section of our Constitution, in question here : 'Still, I think they are substantially of the same character. So much of the eighth section of said tenth article of the Constitution, as is drawn in question here, speaks from, and including, the 22d of August, 1872, the day of its adoption by the qualified voters of the State. The words "already" and "hereafter," as used in the section, plainly have reference to that time. It was at that time that the Constitution acquired life and force. The case of *Groves v. Slaughter*, 15 Peters, (Sup. Ct. U. S.,) 449, has been cited in argument by appellants, but the phraseology of the section in question, in that case, is materially different from this case, and the court there held that legislation was "indispensable" to give effect to the section.

The City, under its charter, and amendments thereto, could only authorize and direct its bonds to issue by, and through its Council. The Council did not direct subscriptions to be made and the bonds to issue till long after the 22d of August, 1862. The eighth section of the tenth article of the Constitution applies to these bonds clearly, and they do not come within the exception specified in said section. The plain and evident meaning, and intent of the people in the adoption of this section of the tenth article of the Constitution was to prescribe a limit beyond which cities, counties &c., should not go in the contraction of debts.

The section and article of the Constitution under consideration was not intended to, and does not in anywise, interfere with or prevent the levying, collecting and expenditure of taxes annually, by authority of law, by the proper, legal authorities of the counties, cities, &c., for needful and proper purposes of such counties, cities, &c., and to do and cause to be done whatever is necessary for that purpose, including the making and causing to be made, contracts touching the disbursement of the taxes levied and collected annually and the like: And all this without a vote being taken under said eighth section of said tenth article of the Constitution. Sections seven and nine, article eighth section twenty-eight, article twelve. It was intended to prevent the county authorities, city authorities &c., respectively, from creating debts against the counties, cities, &c, respectively without the assent of three-fifths of the voters of the county or city, &c., voting upon the question, as to whether the debt should be created, and then not exceeding the limit prescribed in the section. The evident object of the section was to prevent a growing evil of the day, viz: The creation of large debts, the unnecessary and wasteful, as well as fraudulent, expenditure of the substance and earnings of the people and unnecessary and oppressive taxation. Whether the section will accomplish the object or not remains to be seen by experience. It is to be hoped it will.

"The real purpose and intention of the legislature is the thing to be ascertained in the construction of a statute." "All rules of construction must yield to the expressed will of the legislature and to the will of the people as expressed in the constitution. General laws do not repeal special or local laws, unless the intent clearly appears." It has been well asked what was the intent of the constitutional provision under consideration, except to limit and restrict the privilege of contracting debt, which was allowed by former legislation, general or special, to cities, counties, &c., as well as the limiting of the privilege afterwards. In many instances, to accomplish the object sought, it was just as necessary to restrict the privilege conferred by former laws, as to prevent it in future. This may be readily seen by consulting prior legislation upon the subject. A constitution scarcely ever repeals a former statute by express reference thereto—it is generally done, when intended, by the use of general terms upon the subject had in view. The counsel of the appellants has referred to the third section of the eleventh article of the Constitution as qualifying or suspending the operation of the eighth section of the tenth article. The section is in these words, viz : "All existing charters of special or exclusive privileges under which organization shall not have taken place or which shall not have been in operation within two years from the time this Constitution takes effect, shall thereafter have no validity or effect whatever. "Provided, That nothing herein shall prevent the execution of any *bona fide* contract heretofore lawfully made in relation to any existing charter or grant in this State." The whole of said eleventh article of the Constitution, unless said third section is an exception, is in relation to joint stock companies and private corporations so called—municipal corporations are not the general or special subject of the article in any part of it and indeed are not mentioned or referred to.

It has been suggested that the said third section from its connection, its language, and the general and special subjects of the article, was not intended to apply, and does not apply, to municipal corporations. This may be true but I do not now decide that question—regarding it immaterial to this case, as I am clearly of the the opinion that the said third section does not qualify or suspend the operation and effect of said eighth section of the tenth article. The said third section is not a grant of charters or of special or exclusive privileges, or an enlargement of charters, or special or exclusive privileges, but simply provides that all such, under which organization shall not have taken place within two years from the time the Constitution takes effect, shall thereafter have no validity of effect whatever—subject to the proviso therein contained, which clearly does not apply here. The incorporation of municipal corporations is embraced in the thirty-ninth section of the sixth article of the Constitution, and that section is specially directed to "the Legislature," and does not repeal or affect prior subsisting acts of incorporation, of a municipal character, but applies to future legislation. By reference to the Constitution it will be seen that quite a number of the sections of different articles thereof, are directed to the Legislature. See third Article sec. 7; Article 4, secs. 8 and 11; Article 6, secs. 18, 36, 37, 39, 40, 43, 45, 49 and 50; Article 8, secs. 13, 15 and 22; Article 9, secs. 3 and 6; Article 10, secs. 2 and 9; Article 11, secs. 4, 5 and 10; Article 12, secs. 1 and 12: The character of these sections is wholly different from that under consideration, as may be seen by reference thereto. The Legislature, however, may amend and, perhaps, repeal prior subsisting acts, incorporating municipal corporations.

It has been suggested in argument that the said eighth section of the tenth article of the Constitution applied to this case interferes with vested rights or impairs the obligation of contracts. The case of *Aspinwall v. The*

*Board of Commissioners of the county of Davies* decided by the Supreme Court of the United States, is a case in point, and fully meets and overrules this suggestion. It is reported in 22 Howard, (Sup. Ct. U. S.) page 364. Among other things, it is decided in that case, "that the mere vote to subscribe did not, of itself form such contract, with the railroad company, as would be protected by the tenth section of the first article of the Constitution of the United States. Until the subscription was actually made the contract was unexecuted." In that case the vote of the people of a county was taken under an act of the legislature upon the question of subscription, &c., as here, and afterwards the people of the State of Indiana adopted a new constitution, one of the articles of which prohibited subscriptions by a county unless paid for in cash, and prohibited, also, a county from loaning its credit or borrowing money to pay such subscriptions. And after the adoption of the new constitution the county commissioners made the subscription authorized by the act of the legislature and issued the bonds of the county therefor; and it was held that said article of the Indiana constitution was operative and applied to the county commissioners and repealed the act of the legislature authorizing the subscription.

Under the averments of the bill and the ordinances of the Council filed therewith I think it was not error to unite both subscriptions in the bill. The jurisdiction of equity in such cases as this seems to be established by a number of judicial decisions. When I first examined the final decree in this cause perpetuating the injunction, it struck me that by the terms employed, viz: "That the defendants and each of them be, and they are, hereby enjoined and restrained from contracting the debts and issuing the bonds in the bill of complaint mentioned, or any or either of them, or any part thereof," it was too broad; upon careful examination, however, I am satisfied that the decree should be con-

strued to apply only to the said ordinances of the Council of the City authorizing the subscriptions, or either of them to be made and authorizing the issuing and payment thereof or any part thereof in the bonds of the City and the making of said subscriptions, or either of them, for the amounts thereof or any part thereof in such manner as to create a debt against the City. That it does not prohibit the City of Wheeling or its Council from hereafter contracting any such debt, and issuing the bonds of the City therefor, when done in pursuance of and according to the provisions and within the restrictions and requirements of the said eighth section of the tenth article of the Constitution and any act of the Legislature which may then be in force not in conflict with or contrariant to said section and article, no matter whether such debt be created by subscribing to or for the stock of said railroads or either of them, or any other purpose. In such case to make the action valid all the requirements of said eighth section of the tenth article of the Constitution must be observed, and complied with in contracting such debt.

There were some other questions made in this cause which, under the view I have taken, are immaterial and unnecessary now to determine.

Construing said final decree and its effect, as above stated, and for the reasons above stated, the decree of the circuit court of the county of Ohio perpetuating the injunction awarded in the cause, which was rendered on the 7th day of May, 1873, must be affirmed with costs to the appellees and $30 damages.

The other Judges concurred.

DECREE AFFIRMED.