Charles McAllister et al. *v.* Increase C. Plant.

1. Trusts and Trustees.  *Right of survivorship.*

   Where an estate is conveyed to trustees jointly, the right of survivorship exists; and, upon the death of one, his interest does not descend to his heirs, but vests in the other.   This rule is not affected by statutes abolishing joint tenancies and converting them into tenancies in common, unless the language of the statute expressly embraces trust estates.   Our statute, Code 1871, § 2301 (Code 1857, p. 309, art. 18), converting joint tenancies into tenancies in common, expressly excepts trust estates from its operation.

2. Same.  *Parties to foreclosure bill.  Heirs of deceased trustee.*

   Where, to secure bonds issued by a railroad company, the franchise, road-bed and appurtenances are conveyed to trustees jointly, the trust does not, upon the death of one, descend to his heirs, but vests in the other; and it is unnecessary to make the heirs of the deceased trustee parties to a bill in chancery to foreclose a prior mortgage.

3. Chancery.  *Jurisdiction.  Mortgage with power of sale.*

   A power of sale given in a mortgage does not oust the jurisdiction of a court of chancery, nor preclude a party from resorting to that tribunal.   It is cumulative only ; and, in many cases, various conflicting interests render it highly proper that mortgagees should resort to judicial proceedings, rather than to the exercise of the summary rights conferred by the instruments under which they claim.

4. Same.  *Other powers in mortgage do not oust of jurisdiction.*

   A bill to foreclose, by sale, the first mortgage on a railroad, alleged that by the mortgage the franchise, road-bed and appurtenances had been conveyed in trust, with power in the trustees, on default in payment of the bonds secured, to take possession of the road and operate it and to apply the proceeds to making said payment, or upon the written request of one or more bondholders to sell the road at auction, or to enforce payment of the bonds by proper pro-

ceedings at law or in equity.   *Held*, that the trustees or bondholders were not confined to any particular order of priority in resorting to any one or all of the powers conferred by the mortgage; and that, even if they were, this would not deprive the Chancery Court of jurisdiction to foreclose in a proper case.

5. RAILROAD.   *Charter.   Power to mortgage property.*

A railroad company, whose charter grants the right " to acquire, alien, transfer and dispose of property of every kind," may mortgage its property.   The power to sell carries with it the power to mortgage.

6. SAME.   *Power to mortgage franchise.*

In the absence of express statutory authority, *quære*, whether a railroad corporation can alien or mortgage its franchise, and thus transfer to another that existence which is the creature of legislative grant.

7. SAME.   *State alone can complain of sale of franchise.*

A railroad corporation, like any other trading company, may convey, either absolutely or upon condition, all property which it is authorized to hold, or which is essential to carrying on the business for which it was designed.   The power of a court of chancery to put the assignees or mortgagees in possession of the property and business of the corporation would leave little to be decided as between private parties.  · *Semble*, that whether the assignees could enjoy the franchise and corporate existence is a question in which the State alone would be interested.

8. SOUTHERN RAILROAD COMPANY.   *Power to issue bonds and execute mortgages.*

By the act of Dec. 26, 1856 (Acts 1856–57, p. 105), authorizing the Southern Railroad Company to buy out and absorb the Vicksburg and Jackson Railroad Company, it was expressly empowered to issue bonds and execute mortgages to secure the same upon its property, real and personal, and upon its appurtenances and franchise; which bonds might be used in paying the indebtedness growing out of the purchase of the Vicksburg and Jackson Railroad, or in the construction of the unfinished portion of said road, or in such other way as the company might desire.

9. ESTOPPEL.   *Denial of power of common grantor to make deed.*

Trustees in junior mortgages, who are parties defendant to a bill to foreclose a senior mortgage given by a railroad company on its franchise, road-bed and appurtenances, cannot be heard to say that the corporation had no power to execute such an instrument.   If their position were correct, they would themselves have no *locus standi* in the litigation.

10. CHANCERY.   *Pleading.   How written instrument pleaded.*

It is only necessary that a writing should be referred to according to its legal import and effect, without specifying all the details necessary

to give it validity. And where a bill to foreclose a mortgage on a railroad alleges that the company, by its corporate name, made certain bonds and coupons, and on the same day, to secure such bonds, made and delivered a deed purporting to be a trust-deed, and by said trust-deed granted, sold and conveyed to the trustees certain property, real and personal, which is described, it is set forth with sufficient definiteness that a mortgage was in fact executed; and the objection that it is not sufficiently stated that the same was under seal is not well founded.

APPEAL from the Chancery Court of Warren County.

Hon. EDWIN HILL, Chancellor.

This is an appeal from a decree overruling a demurrer by the trustees in junior mortgages on the Vicksburg and Meridian Railroad, to a bill by a first mortgage bondholder, to foreclose the first mortgage by sale.

The allegations of the bill and the grounds of demurrer are set out in the opinion of the court.

*W. L. Nugent*, for the appellants.

1. In this cause it is important to ascertain what has been the legislation of the State in connection with the Southern Railroad Company, as respects the trust-deed executed to secure the Magee bonds, because the complainant is the holder of some of these bonds, and of no other bonds issued by the company. This is especially necessary, if it be true, as I insist, that the company had no right or power to issue bonds and execute the mortgage in question, without legislative grant or authority for that purpose. This authority is a condition precedent, without which the power to incumber the *franchise and property* of the company does not exist.

The mortgage to Magee, if under the sanction of law at all, was executed by virtue of the third section of an act of the legislature, approved Dec. 26, 1856, entitled " An Act to amend the charter of the Southern Railroad Company, and of the Vicksburg and Jackson Railroad Company, and to authorize the sale of the property of the latter company to the former." This being the only law authorizing the mortgage, it is important to notice the fact that this act is not even referred to in the bill as sanctioning the mortgage or trust-deed to Magee.

2. It is a fundamental rule in pleading that every fact necessary to the complainant's right to recover must be alleged

with accuracy and clearness, and with certainty as to all the circumstances necessary to maintain that right.   He must make a *prima facie* case by his bill, or he will fail.   *Warner* v. *Warner*, 33 Miss. 547 ; *Farr* v. *Farr*, 34 Miss. 597 ; *Prestidge* v. *Pendleton*, 24 Miss. 80 ; *Dodge* v. *Evans*, 43 Miss. 570 ; *Learned* v. *Matthews*, 40 Miss. 210.   If, therefore, an act of the legislature was necessary before the deed could be executed or the bonds issued, and, without the sanction of a positive statute, both are *ultra vires* and invalid, it follows that it was necessary for the complainant to allege the facts, to bring himself within the statute.   The corporation, being the mere creature of the law, possesses, of necessity, only those properties which are conferred upon it by its charter, either *expressly or as incidental to its existence.*   These incidental powers are such as are supposed to be best calculated to effect the object for which it was created, and no other.   Angell & Ames on Corporations, § 3.   It is quite manifest that the power to execute bonds and mortgages *generally* is not an incidental power in contemplation of law ; and it is well settled that to the creation of a valid mortgage by a railway company the consent of the legislature is indispensable. 2 Redfield on Railways, 480, note 25 ; *East Boston Railroad* v. *Eastern Railroad*, 13 Allen, 422 ; *Coe* v. *Columbus Railroad*, 10 Ohio St. 372.

3. But there is another objection to the bill in this, that it fails to allege that the mortgage relied upon was executed under the common seal of the company.

Under our system of jurisprudence, a seal is an indispensable incident to a mortgage.   To be valid, it must be under seal ; and, in the case of a corporation, under the common seal of the company.   An unsealed instrument intended for a mortgage is a mere contract, gives no lien as against a subsequent assignment for the benefit of creditors, and will be set aside upon petition as a cloud upon the title.   The term " mortgage " is a technical term, and must be technically construed.   *Erwin* v. *Shuey*, 8 Ohio St. 509 ; *Bloom* v. *Noggle*, 4 Ohio St. 45 ; *Walton* v. *Cody*, 1 Wis. 420.

4. We are willing to concede that a railway company may execute bonds and mortgages, even without some statute

authorizing such an act, for the benefit of its creditors, and that for the simple reason that its creditors might, by due process of law, take the property of the company in execution. Having the right thus to take the property *in invitum*, the company must have the power to anticipate results by the execution of a mortgage upon the property. But, to support such a mortgage, there must be existing creditors,—an existing valid debt,—and the instrument must be executed by the corporation in the mode prescribed by the charter. The complainant could only be entitled to recover in this point of view, if the allegations of his bill conformed to the conditions fortifying and supporting his mortgage, which is not the case.

5. It may be admitted, also, that a railway company has the power to borrow money for the purpose of constructing its road, as one of the implied means necessary and proper to carry into effect its specific powers, and, along with this, the power to execute a mortgage to secure the debt thus created; but still the facts must appear on the face of the bill. At common law, a railway did not possess the power to assign its *franchise*. *Arthur* v. *Commercial Railroad Bank*, 9 S. & M. 431; *Commonwealth* v. *Smith*, 10 Allen, 448.

6. But the most formidable objection to the bill is found in the contract itself. The trusts and conditions of the complainant's mortgage are, *that, on default made in the payment of the bonds secured thereby, the trustees should take possession of the road, and, after paying necessary expenses, should apply the net earnings of the road to the payment of the bonds recited in the deed.* Beyond this they were not allowed to go, except at the written request of the bondholders, and that only after they had taken possession of the road, as attorneys in fact of the company, under the power contained in the deed. After they had taken possession, the power to sell depended, for its exercise, upon the written request of the bondholders as a *condition precedent*. For aught that appears, the trustees, *if notified of the alleged default as the deed requires*, are ready and willing to discharge their duties according to the very terms of the contract. *Powell* v. *Wright*, 7 Beav. 444; *Shaw* v. *Norfolk County Railroad*, 5 Gray, 162; 2 Redfield on Railways, 465, note.

7. The bill seeks to avoid this result by the allegation that

Magee is incompetent to act as trustee, because he is a beneficiary under the deed, and represents *as agent* a large number of the bondholders.    This I take to be an argument rather in his favor.    By the special contract he is the representative of all the bondholders, including the complainant himself.    It would be his duty to represent the few without any special agency, when the exigency which requires it had happened.    Hill on Trustees, 190, 194 and note 1, 291; 2 Story Eq. Jur. §§ 1191 *a*, 1287, 1289 *a; Cheever* v. *Rutland & Burlington Railroad*, 4 Am. Rail. Rep. 300; *Shaw* v. *Norfolk County Railroad*, 5 Gray, 170, 171.    In this connection I call the court's attention to the case of *McElrath* v. *The Pittsburg & Steubenville Railroad*, 1 Am. Rail. Rep. 139, which affirms the doctrine here contended for.    In that case, the court says: " The bondholders, in such a mortgage as this is, are not the parties to it, though they have rights under and claim through it.    The true party is the trustee, to whom it is given as the security for all the bonds issued under it."    " Hence the trustee is the party to be summoned to defend the interest of those who claim under the mortgage.    The bondholders are privies in interest, and may come in to defend *pro interesse suo*, but their rights are affected by the decree against their trustee."    " These principles will be found to be sustained by the following cases: *Dougherty's Estate*, 9 W. & S. 189; *Dickerson's Appeal*, 7 Barr, 255; *Thompson's Appeal*, 57 Penn. St. 175; *Clark* v. *Douglass*, 62 Penn. St. 408."

8. The last objection we make to the bill is this: Johnson, co-trustee with Magee, is dead, and his heirs-at-law are not made parties defendant.    The averment that his representative is not known does not vary the case.    The deed is to him and *his heirs*, and the *suggestion* is made that the surviving trustee cannot exercise the powers contained in the deed *alone*.    The legal title to the property is in the heirs of Johnson.    It has been cast upon them by descent and under the very limitations of the deed itself.    They are indispensable parties, because any decree appointing a substituted trustee, without their presence in court, would not and could not vest the legal title in him.    In other words, the legal title must be before the court, before it could dispose of it.    *Hill* v.

*Boyland,* 40 Miss. 640 ; Hill on Trustees, 195–197 ; 4 Scam. 429 ; 4 Rand. 451 ; 1 Stew. & Port. 317 ; 4 Pet. 190 ; 2 Mason, 181 ; 1 Pet. 129.

*Shelton & Shelton,* for the appellee.

1. On the allegations of the bill, the heirs of Johnson are not necessary defendants.

(1.) The objection being purely technical, it must be shown by plea that he has heirs, and who they are.

(2.) Johnson and Magee took jointly the conveyance to them, and the trust in them was joint, and neither had power to act separately. The heirs could not participate in the trust, because it was strictly personal, and joint to the two trustees. If, therefore, they are proper parties, it is only because they, at Johnson's death, succeeded to the legal title to a half interest. But the law is, that, upon Johnson's death, the whole legal title vested in Magee. 1 Wash. Real Prop. 559 ; Hill on Trustees, 303 ; 19 Barb. 653 ; 1 Johns. Ch. 119 ; 4 Gray, 428 ; 11 Paige, 13 ; 10 S. & M. 440. Our statute (Code 1857, p. 309, art. 18) expressly recognizes the right of survivorship in trustees by a *proviso.* If we go back to the Code of 1848, we shall find the same rule. Hutch. Code, pp. 611–614, §§ 1–11 inclusive, only provides for partition of land among owners. Sect. 12, p. 614, applies only to owners, as shown by the context. But if § 12, p. 614, Code 1848, stood alone, and the proviso were wanting in art. 18, p. 309, Code 1857, the rule would be the same. 1 Wash. Real Prop. 559 ; Williams Real Prop. 111, and note ; 20 Ala. 112.

For all purposes, therefore, of foreclosing the first deed of trust, the heirs of Johnson were not proper parties, — certainly not necessary parties. Magee, the surviving trustee, is a party.

2. Was it necessary, before filing the bill, for the complainant to request Magee, the surviving trustee, and Johnson's heirs, or either, to execute the trust. As the legal title, which was in Magee and Johnson, accrued to Magee by survivorship, and Magee as survivor has no power to execute the trust, it would be an idle ceremony to ask him to do that which he has no power to do, or to apply to the heirs to execute a trust which was not vested in them.

3. The bill sufficiently shows the validity of the bonds and deed of trust.

(1.) Their validity is settled by the charter, Acts 1846, p. 128, § 4. The act (Acts 1856–57, p. 105), amending the charter, authorized the Southern Railroad to purchase the Vicksburg and Jackson Railroad, and to issue bonds, and secure them by mortgage on its property, road, franchise and equipments. The powers are ample; for, if a trading company be simply authorized to *dispose of its property*, it may dispose of any interest therein deemed expedient for its purposes.   It may lease, grant, mortgage or assign in trust.   Angell & Ames on Corporations, § 190; 5 Ohio, 205; 1 Kyd on Corporations, 108, 114, 116; 5 Wend. 390; 1 Wis. 385; 11 Ala. 437; 15 Ala. 472.   Even if it were shown that the powers expressed in the amendment were so expressed for a particular purpose, it would not abridge the general power to mortgage for the security of creditors.   But the power expressed in the amendment is not restricted.   It is as broad as the preceding law. Unquestionably the bonds and mortgages are valid.   11 Ala. 437; 15 Ala. 472.

(2.) The pleading on this point is technically sufficient. The bill states that the company, by its corporate name, made the bonds and coupons secured by the mortgage; and on the same day made and delivered a deed purporting to be a trust-deed, and by said deed granted, sold and conveyed the property which the bill describes.   It is only necessary that a writing should be set forth according to its legal effect and character.   Stephen on Pleading, 390, 311; 4 Miss. 477; 41 Miss. 102, 229.

(3.) The question of the power of the corporation to convey its road or franchise cannot be raised by one creditor against another.   That is a matter in which the State alone is interested.   7 S. & M. 663; 9 S. & M. 430.

These demurrants have no interest, except as creditors and trustees, under deeds of trust made by the same company under the same authority, whose bonds and deed of trust recognize in writing the validity of our deed and its preference. They are estopped.   12 S. & M. 9; 26 Miss. 434.

4. The objection founded on the terms of our deed derives

its force, if it has any, from the fact that counsel quotes in *Italics* one clause of the mortgage, but omits two others which follow, saving the mortgage and answering his objection. By these two clauses the trustees are authorized *to sell, and to enforce payment in equity.* The bill states, and we have shown, that there is no person who can, as trustee, execute these provisions of the deed; and the prayer is, that the court will, by decree, have it executed as it may judge proper. Perhaps the trustee's right, on non-payment, was to take possession, and run the road. Plainly the creditor's right, on non-payment, is foreclosure and sale.

*Lamar & Mayes*, on the same side.

1. The question whether the heirs of Johnson, a deceased trustee, and Magee, the survivor, are necessary parties to the bill, and the further question, whether a request to Magee, the survivor, was necessary before the bill could be properly filed, cannot be considered between these parties on this record. The demurrants represent a junior mortgage, and make no offer to redeem the first mortgage. Under these circumstances, they are made defendants, and are permitted to be defendants only that they may protect their interests at the statement of the account, and for no other purpose.

In the case of *Brown* v. *Nevitt*, 27 Miss. 801, the court says: "They" (*i.e.* the junior mortgagees) "certainly had a right to be made parties defendant to the bill of the complainant. As junior incumbrancers, in right of their junior mortgage, they should have been made parties, in order that they might have an opportunity to pay off the complainant's prior incumbrance, and to attend to the account to be taken of the complainant's claim, and see that it was correctly taken." "These rights were secured in their being made defendants to the suit. But they make no offer to redeem, and, as defendants, they were entirely competent to attend to the taking the account of the complainant's claim. *They were not entitled to be made parties for any other purpose,* and could not be permitted to interpose, without offering to redeem, and claim a foreclosure," &c. See also Story Eq. Pl. §§ 193–195; 3 Johns. Ch. 461; 1 Paige, 286; *Meysenburg* v. *Schlieper*, 46 Mo. 209; *Williams* v. *Meeker*, 29 Iowa, 292. In the last case, it was held that

a person claiming an interest in the mortgaged premises, who is joined as defendant in a proceeding to foreclose a mortgage, cannot object that even the *mortgagors* are not served, or are not in court. *A fortiori*, such a person cannot object that naked trustees are not in.

The foregoing cases show conclusively that, on proceeding to foreclose a first mortgage, the junior mortgagees will be heard only on matters going to the essence of the contract when the account is stated; that on questions merely reaching the remedy they will not be heard, but that all these questions must be settled between the complainants and the mortgagor.

2. There is still another answer to the demurrant's objection that the bill does not show any request to trustees to sell. The privileges accorded by the terms of the mortgage in case of default are threefold: (1.) The trustees may, in their discretion, take possession of the road and appropriate the proceeds. (2.) The trustees may, at the written request of one or more of the bondholders, cause the road to be sold at public auction, after two months' notice. (3.) The trustees, or their successors, may enforce payment of the principal, when it becomes due, by any proceeding at law or in equity.

Now, in order to give the three provisions effect, they must be construed as follows: Under (1), the trustees could, of their own motion, and without request of bondholders, *take possession*, and run the road; under (3), they could also of their own motion, and without request of bondholders, proceed at law or in equity *to have the road sold;* under (2), they could, on request of bondholders, proceed to sell the road, *without the decree of any court.* And it is only where the *trustees* are proceeding to sell without application to any court that a request is necessary, which is not the case here. In this case, the trustees are not moving at all. It is the bondholders who are doing so, and they have that right. It is well settled that these powers of sale in railroad mortgages are cumulative, and, therefore, do not exclude the right of foreclosure by suit. *Eaton Railroad* v. *Hunt*, 20 Ind. 457; *Walton* v. *Cody*, 1 Wis. 420; *Morrison* v. *Bean*, 15 Texas, 267; *Cormerais* v. *Genella*, 22 Cal. 116; *Thompson* v. *Houze*, 48 Miss. 444.

3. The allegations of the bill as to the validity of the bonds

and mortgage are sufficient. As a mere question of pleading, the failure to charge that they were issued under legislative authority, and that they were under seal, is immaterial, for the reason that those things are necessarily implied in allegations which are made in the bill. On this head we refer to the well-known cases of *Halls* v. *Thompson*, 1 S. & M. 443; *Smith* v. *Williams*, 38 Miss. 48; also to *Moore* v. *Titman*, 33 Ill. 358, where it was decided that an allegation in a bill to foreclose a mortgage, that the defendant " made, executed, acknowledged and delivered a certain deed of mortgage," was sufficient; and could only be construed to mean that the mortgage *was properly made, and valid in its operation;* also to *Railroad Co.* v. *Otoe County*, 1 Dill. 338, where it is held that a *bona fide* holder of negotiable bonds of a county, authorized by statute, need not, when suing in the federal courts, allege facts showing a compliance with the conditions on which the issue of the bonds is authorized. The force of this last decision is apparent, when we remember that it was in a case of *municipal* bonds, whereas these are bonds of a *quasi* trading company. Its perfect aptness will be perceived when we remember that the brief of opposing counsel admits power in the company to issue the bonds under certain conditions. Moreover, this is another technical objection, coming fully within the purview of the principles urged heretofore in this brief.

Considered as an objection to the company's authority to execute the bonds at all, we have nothing to add to the argument already before the court, save to refer to *Sessions* v. *Bacon*, 23 Miss. 272, and *Stone* v. *Montgomery*, 35 Miss. 83, as fully sustaining the proposition advanced, that the power to mortgage is included in the power to sell.

CHALMERS, J., delivered the opinion of the court.

Increase C. Plant, the appellee, as the holder of a large number of the first mortgage bonds of the Vicksburg and Meridian (formerly Southern) Railroad Company, filed his bill seeking a foreclosure, by sale, of said first mortgage. He alleged that there had been four other mortgages executed by the corporation, all junior in date and secondary in dignity to the one by which his bonds were protected. To his bill he

made defendants the railroad company, one of the trustees named in the first mortgage (the other being dead), the trustees in the four subordinate mortgages, and all the holders of bonds known to him by name under all the mortgages, as also, by general designation, those who were unknown. The appellants, who are trustees in junior mortgages, demurred to the bill, upon various grounds; and, their demurrer being overruled, they bring the case here by appeal. We will notice such of the grounds of demurrer as seem important.

The bill alleged, that by the first mortgage, under which the complainant's bonds were protected, the franchise, road-bed and appurtenances thereto of the railroad company had been conveyed in trust to Joseph H. Johnson and James Magee, to protect the bonds therein specified, with power in said trustees, upon default made in the payment of the bonds at maturity, to take possession of and operate the road, and to apply the proceeds to making said payment; or, upon the written request of one or more bondholders, to sell the road at public auction, upon two months' notice; or to enforce payment of the bonds by proper proceedings at law or in equity. It was further alleged, that the bonds were past due and unpaid, and that it had become impossible to have said powers executed, by reason of the death of Johnson, and of the fact that Magee was now a holder of some of the bonds under the first mortgage, and also of other bonds under the junior mortgages, besides being likewise a trustee in some of the junior mortgages; and that being thus an interested party, and occupying antagonistic positions with conflicting interests, it was improper that he should exercise the powers conferred upon him by the first mortgage.

The heirs and representatives of Johnson, the deceased trustee, were not made parties, and this is made ground of demurrer. The conveyance to the trustees was joint, not joint and several. It is well settled, that, where an estate is conveyed to trustees jointly, the right of survivorship exists; that, upon the death of one, his interest does not descend to his heirs, but vests in the other; and that this rule is not affected by statutes abolishing joint tenancies and converting them into tenancies in common, unless the language of the statute expressly embraces trust estates. The reason for this is obvi-

ous.    The evil to be remedied by the conversion of joint tenancies into tenancies in common was the improper accretion to one party of that which properly belonged to two, and the consequent enrichment of one and impoverishment of the other's estate.    But inasmuch as trust property, whether held by one or both, would only be held for the benefit of the *cestui que trust*, whose estate would be in no manner affected by the death of one of the trustees, the reason of the law ceases, and with it the law itself.    1 Wash. Real Prop. 559 ; Williams Real Prop. 125 ; 1 Perry on Trusts, § 343 ; *Parsons* v. *Boyd*, 20 Ala. 112.    These authorities seem applicable to States where the statutes abolishing joint tenancies are silent as to estates held in trust ; but our statutes on this subject expressly except such estates from their operation.    Code 1857, p. 309 ; Code 1871, § 2301.    The trust conferred upon Johnson and Magee jointly did not, upon the death of the former, descend to his heirs, but vested in the latter.    It was not necessary, therefore, to make Johnson's heirs parties to this proceeding.

It is urged further by the demurrants that the excuses given for the non-execution by Magee of the powers conferred by the mortgage are insufficient, and do not justify the invocation of the authority of the Chancery Court, because the complainant's remedy was ample under the mortgage, either to take possession of or to sell the road.    It is a sufficient answer to this position to say that a power of sale given in a mortgage does not oust the jurisdiction of a Court of Chancery, nor preclude a party from resorting to that tribunal. It is cumulative only ; and many cases exist (and we think the case at bar is eminently of that character) where various conflicting interests render it highly proper that mortgagees should resort to judicial proceedings rather than to the exercise of the summary rights conferred by the instruments under which they claim.    *Thompson* v. *Houze*, 48 Miss. 444 ; *Eaton Railroad* v. *Hunt*, 20 Ind. 457.

These remarks dispose also of the objection that the first mortgage contemplated that the bondholders thereunder should look first for payment to the net earnings of the road, after the same should have been taken possession of by their trustees, and that no sale should take place until this had

been done, and then only upon the written request of some bondholder. We cannot see, from the allegations of the bill, that the trustees or bondholders were confined to any particular order of priority in resorting to any one or all of the several powers conferred by the mortgage; and, even if they were, this would not, as before remarked, deprive the Chancery Court of its right to foreclose in a proper case.

It is objected that no power is shown in the railroad company to execute a mortgage. The charter grants the right " to acquire, alien, transfer and dispose of " " property of every kind." The power to sell carries with it the power to mortgage; and this would suffice, so far as the *property* of the company, as distinguished from the franchise, is concerned. *Sessions* v. *Bacon*, 23 Miss. 272; *Stone* v. *Montgomery*, 35 Miss. 83. Whether, in the absence of express statutory authority, a railroad corporation can assign or mortgage its franchise, and thus, as it were, transfer to another that existence which is the creature of legislative grant, is a grave question, upon which that most eminent of American authorities, Judge Redfield, declines to express a decided opinion. 2 Redfield on Railways, 514, note.

There is no doubt, however, that such a corporation, like any other trading company, may convey, either absolutely or upon condition, all property which it is authorized to hold, or which is essential to carrying on the business for which it was designed; and, as remarked by Judge Redfield, the undoubted power of a court of chancery to put the assignees or mortgagees in possession of the property and business of the corporation would leave but little to be decided as between private parties. Whether the assignees could enjoy the franchises and corporate existence derived from the State would seem to be a question in which the State alone would be interested. *Wade* v. *American Colonization Society*, 7 S. & M. 663; *Arthur* v. *Commercial Railroad Bank*, 9 S. & M. 394. This view is strengthened in this State by our statute making the franchises of corporations vendible under execution. Code of 1871, § 2414. Upon these questions, however, we do not now express any decided opinion.

By the act of Dec. 26, 1856 (acts of 1856–57, p. 105), the

Southern Railroad Company was authorized to buy out and absorb the Vicksburg and Jackson Railroad Company, and by said act was expressly empowered to issue its bonds and execute mortgages to secure the same upon its property, real and personal, and " upon its appurtenances and franchise." These bonds, thus authorized and protected, it was declared might be used in paying the indebtedness growing out of the purchase of the Vicksburg and Jackson road, " or in the construction of the unfinished portion of said road, *or in such other way as the company may desire.*" Certainly language could not be broader or more explicit than this. All the mortgages of the company were executed after the passage of this act.

It is difficult to see how the appellants, who are only parties to this proceeding because they are trustees in junior mortgages, can be heard to say that the corporation had no authority to execute such an instrument. If their position was correct,· they would themselves have no *locus standi* in this litigation.

But it is urged by the demurrants that the allegations of the bill do not set forth with sufficient definiteness that a mortgage was in fact executed, and especially that it is not sufficiently stated that the same was under seal. The allegations are, that the company, by its corporate name, made the bonds and coupons, and on the same day " made and delivered a deed purporting to be a trust-deed, and by said trust-deed granted, sold and conveyed " to the trustees certain property, real and personal, which is described. Even in pleadings at law it is only necessary that a writing shall be referred to according to its legal import and effect, without specifying all the details necessary to give it validity. Stephen on Pleading, 311, 353, 390. The allegations of the bill are ample in this regard.

Let the decree overruling the demurrer be affirmed, with leave to the defendants to answer within sixty days.

Simrall, C. J., having been of counsel, took no part in the foregoing decision.