# CHARLES TOWN.

ALLISON *et al* v. CITY OF CHESTER *et al.*

Submitted June 12, 1911.   Decided September 9, 1911.

MUNICIPAL CORPORATIONS—*Limitation of Indebtedness—Contracts with Water Company.*

  A contract of a municipal corporation, with a water works company, for a supply of water for public use, for a stipulated number of years, at a stipulated price per year, payable in quarter annual payments, is not void, by Section 8, Article 10, of the Constitution, limiting municipal indebtedness, because the aggregate of such payments, for the full term of the contract, with existing indebtedness, exceeds the amount for which such municipality, is by said section, allowed to become indebted. The validity of such contract is tested by the aggregate of the quarterly payments for the first year. (pp. 536 to 539).

Appeal from Circuit Court, Hancock County.

Bill by Charles F. Allison and others against City of Chester and others. Decree for defendants, and plaintiffs' appeal.

*Affirmed.*

*J. B. Sommerville,* for appellants.

*Hubbard & Hubbard, Billingsley & Clark* and *W. B. Moore,* for Appellees.

MILLER, JUDGE:

The decree appealed from, dissolving the preliminary injunc-

tion and dismissing plaintiffs' bill, presents for decision a single question, a question of constitutional limitation.

Amendatory of a prior ordinance of November 20, 1903, the Council of the City of Chester, on November 4, 1909, adopted an ordinance reciting the passage of the former ordinance by which it had contracted with the South Side Water Works Company for a supply of water for extinguishing fires, and for other purposes, and since which time the growth of the city had been such as to require the laying of a more extensive system of water mains than originally contemplated and provided for, and that further extensions would be required from time to time, and that the making of such extensions and additions as was and would be required, and was proposed, to meet the new and continually increasing demands, the Water Works Company would be required to expend a large amount of money; and furthermore reciting that in order to justify said company in making such expenditures, and to enable it to secure the funds necessary to extend and enlarge its plant as desired, and proposed, it was then ordained as follows: "Section 1. That said contract entered into by said ordinance of November 20, 1903, and the acceptance thereof by the South Side Water Works Company, be altered so that said Company shall, for a period of 30 years, supply fire hydrants and water to said city for extinguishing fires and for other purposes, and the said city shall during the said period pay for the same at the rate and upon the conditions following, to-wit:

"(1) Said Water Works Company shall maintain the fire hydrants already in place in said city and connected with said Company's mains, and said Company shall also furnish, install and maintain at such points on said company's mains as may be designated by Council such additional fire hydrants as Council may from time to time require. Hydrants which may be installed shall be of the same pattern or equal efficiency with those already in use, and no hydrant once installed or maintained under this contract shall be discontinued during the term thereof.

"(2) Said Water Works Company shall at all times during the term of this contract, except in case of accident to machinery or mains, or when making connections, furnish water at all of said fire hydrants at such pressure and in volume as may be reasonably required for fire protection.

"(3) Said Water Works Company shall furnish, erect on its mains and supply with necessary water, free from all charges to the city, such iron drinking troughs for horses as Council may approve, not to exceed four in number, which troughs shall be maintained and kept in good repair by Council during the term of this contract.

"(4) The city shall have the right to use water from said fire hydrants for extinguishing fires, and to a reasonable extent for sprinkling and cleaning streets or fire department practice.

"(5) The City of Chester, in consideration of the foregoing stipulations on the part of the Water Works Company, agrees to pay said Company at the rate of Forty-Five Dollars ($45.00) during the term of this contract for each fire hydrant now maintained or hereafter installed under order of the Council up to and including fifty in number. Water for flushing sewers shall be paid for at the rate of ten cents per thousand gallons. Payments hereunder shall be made quarterly by the city in full for all service rendered by the Water Works Company during the preceding quarter."

Section 8, Article 10, of the Constitution provides: "No county, city, school district, or municipal corporation, except in cases where such corporations have already authorized their bonds to be issued, shall hereafter be allowed to become indebted, in any manner, or for any purpose, to an amount, including existing indebtedness, in the aggregate, exceeding five per centum on the value of the taxable property therein to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness; nor without, at the same time, providing for the collection of a direct annual tax, sufficient to pay, annually, the interest on such debt, and the principal thereof, within, and not exceeding thirty-four years; Provided, That no debt shall be contracted under this section, unless all questions connected with the same, shall have been first submitted to a vote of the people, and have received three-fifths of all the votes cast for and against the same."

It is conceded that the annual payments provided for in the contract can be paid each year out of the current revenues of the city, but that the aggregate of such payments can not be so met, and that if such aggregate constitutes an indebtedness within the meaning of the Constitution the contract is void; for it is

also conceded that the questions connected with the making of the contract had not prior to entering into the same been first submitted to the vote of the people, as required by the provisions of the organic law.

The sole question, presented for decision then,.is, should the aggregate of all the quarter annual payments provided for in the contract be treated as an indebtedness of the City of Chester, within the meaning of the constitutional inhibition, or only that portion thereof which were thereby to become due the first year?

It is well settled in this, and in other states having like or similar constitutional provisions, that municipalities may not become indebted absolutely or contingently beyond the constitutional limitation, for present delivery of property, or for services performed, or to be performed, as in the building of water works, or any other kind of municipal improvements, even though the time of payment be postponed to future dates, no matter what may be the form of the contract.    Our own cases of *List* v. *Wheeling,* 7 W. Va. 501; *Spilman* v. *Parkersburg,* 35 W. Va. 605; *Honaker* v. *Board of Education,* 42 W. Va. 170; *Shinn* v. *Board of Education,* 39 W. Va. 497; *Dempsey* v. *Board of Education,* 40 W. Va. 99; *Camden Clay Co.* v. *New Martinsville,* 67 W. Va. 525, and *Davis* v. *Wayne County Court,* 38 W. Va. 104, all, with the cases cited, sustain and illustrate the application of this well settled rule.

But it is contended for appellant, with respect to *Davis* v. *County Court,* not that it was a case on all fours with the case at bar, but that the principles announced therein, and, as it is claimed, substantially approved in *Spilman* v. *Parkersburg, Camden Clay Co.* v. *New Martinsville,* and other cases, goes farther, and, using the language of the decision, holds that, where such municipal authorities "attempt to or do bind, without a proper vote of the people, the levies of future years in any manner or for any purpose whatsoever, either by contract, express or implied, their action in so doing is a usurpation of power and an infringement of the constitution, and such contract is null and void." The language of Judge HOLT, in *Spilman* v. *Parkersburg,* much.relied on, is: "By the term 'indebtedness' as here used, is meant the state of being by voluntary obligation, express or implied, under legal liability to pay in the present or at some future time for something already received, or for some-

thing yet to be furnished or rendered.   This includes every kind of indebtedness, no matter in what manner created, or voluntarily brought about; or for what purpose, whether it be for municipal self preservation or not; whether for pure air, pure water, good light, clean and convenient and safe streets and sidewalks; whether it be payable now or hereafter, payable quarterly or annually, or at any date running on for thirty four years; whether for current expenses, or fixed and definite debts or charges; whether for personal property or real property, leasehold or freehold; it is none the less indebtedness, created in some manner and for some purpose, and is within the purview and the bar of the Constitution." This very broad and comprehensive definition of the term indebtedness, clearly comprehended the case which the court there had in hand. It is substantially the definition of the term given in 22 Cyc. 75, but this authority says: "It is a word of large meaning, and must be construed in every case in accord with its context." So that when our constitution makes use of the term "indebted," we must look to the whole context to interpret its meaning. As throwing light on this question the words of the same article of the constitution: "Nor without, at the same time, providing for the collection of a direct annual tax, sufficient to pay, annually, the interest on such debt, and the principal thereof, within, and not exceeding thirty-four years." Clearly the liability of the contract we have here is not such an indebtedness as is comprehended by this clause, which apparently is applicable to all indebtedness inhibited by the constitution.

Moreover, the language of a court should always be interpreted with reference to the particular case in hand. In the *Davis Case* the controversy related to certificates of indebtedness, or so called road orders, issued by the county court, apparently, in payment of a county bridge. In *Spilman* v. *Parkersburg,* the subject of controversy was a contract in the form of a lease, by the terms of which, the City of Parkersburg, at the termination of the lease, if all annual payments provided for had been paid, was to become the owner of an electric lighting plant, constructed by the lessor, as provided by the contract. Unquestionably the contracts involved in each of those cases constituted debts, from their inception, and although in the latter case the contract for lighting the streets was in form a lease, it was in fact a con-

ditional purchase of the property, binding the levies of the city for future years, an indebtedness of the city, and void as an infraction of the constitutional inhibition against the creation of such indebtedness, without submitting the question pertaining thereto to a vote of the people.

The record before us presents no such case as was presented in *Davis* v. *County Court* or *Spilman* v. *Parkersburg.* The contract here involved relates to an annual supply of water; the water may never be furnished, or furnished for only a portion of the term provided for; it amounts in our opinion to a mere provision for the necessary current annual expenses of the city, the aggregate of the payments not comprehending an indebtedness inhibited by the constitution.

It is conceded, however, that there are decisions in other states, notably in Illinois, holding that contracts, such as is here involved, do constitute indebtedness within the meaning of the constitution of those states. *Culbertson* v. *City of Fulton,* 127 Ill. 30, 18 N. E. 781, and *Chicago* v. *McDonald,* 176 Ill. 404, 52 N. E. 982, among other cases, are cited and relied on.

We deem it wholly unnecessary to enter into any extended review or analysis of these cases, or those to the contrary on which we base our conclusions, or to discuss the underlying principles involved. That has been sufficiently accomplished, we think, in prior decisions of this Court, and the numerous cases cited and relied on in the text books and decisions cited.

In disposing of this case it seems only necessary to say that we are disposed to follow the great weight of judicial authority, including the decisions of the Supreme Court of the United States, and many other state and federal cases, and, as we think, the better supported by reason, in holding that where the contract or ordinance, as in the case at bar, is one intended to provide for the furnishing of a municipality with water to be used for public purposes, the payment therefor to be made from year to year, such contract should not be construed or treated as the creation of an indebtedness within the inhibition of our constitution, except as to the amount actually fallen due, but as a mode or means of providing for the necessary current expenses of the municipal government. True the revenues of succeeding years, to a certain extent, become bound for the future performance of the contract, and beyond the discretion of the municipality to

alter or abrogate; but a supply of water is an absolute necessity, indispensable to the very existence of the people, and without such authority to so contract, a municipality would be entirely helpless. Judge BRANNON, arguendo, citing many cases, expresses approval of this doctrine, in *Welch Water, Light and Power Co.* v. *Town of Welch,* 64 W. Va. 373, 62 S. E. 497, 498, and we think it sound, and that it is not in conflict with any prior decision of this Court. Some of the many cases so holding are *Walla Walla Water Co.* v. *Walla Walla,* 172 U. S. 1; *Beard* v. *Hopkinsville,* 95 Ky. 239, 24 S. W. 872, 44 Am. St. Rep. 232, and note; *Higgins* v. *San Diego,* 118 Cal. 524, 45 Pac. 824; *McBean* v. *Fresno,* 112 Cal. 159, 44 Pac. 358; *Voss* v. *Waterloo Water Co.,* 163 Ind. 69, 71 N. E. 208; *South Bend* v. *Reynolds,* 155 Ind. 70, 57 N. E. 706; *Cunningham* v. *The City of Cleveland,* 39 C. C. A. 211; *Grant* v. *City of Davenport,* 36 Iowa 396; *Stedman* v. *City of Berlin,* 97 Wis. 505, 73 N. W. 57; *Wade* v. *Burrough of Oakmont,* 165 Pa. St. 479, 30 Atl. 959; *Gas Light Co.* v. *New Orleans,* 42 La. Ann. 188, 7 So. 559; *Raton Water Works Co.* v. *Town of Raton,* 9 New Mexico 70, 49 Pac. 898; *Luddington Water Supply Co.* v. *City of Luddington,* 119 Mich. 580, 78 N. W. 558. In 28 Cyc. 1544, citing in notes the above and many other cases, the law is stated thus: "A contract by a municipality to pay for water, lights, sewage, and the like, at stated times in the future, does not create an indebtedness for the aggregate amount of such payments, within the meaning of a provision limiting the indebtedness of municipalities, and the validity of such a contract is tested by the amount of the first payment thereunder."

We hold that the decree appealed from is right, and our opinion is to affirm it.　　　　　　　　　　*Affirmed.*