PAUL P. WARDEN, *etc. v.* THE CITY OF GRAFTON *et al.*

(CC 668)

Submitted May 11, 1943. Decided May 18, 1943.

KENNA, JUDGE, dissenting in part.

*Gene W. Ford,* for plaintiff.
*John K. Burdett* and *D. H. Hill Arnold,* for defendants.

ROSE, JUDGE:

In this case we have for determination ultimately the question of the legality of a series of general obligation

bonds in the amount of $40,000.00, and a series of so-called revenue bonds in the amount of $160,000.00, authorized by the City of Grafton by separate ordinances adopted on June 22, 1942, and the 14th day of January, 1943, respectively.

The Charter of the City of Grafton is Chapter 79 of the Acts of the Legislature of 1913, by Section 19 of which the city is empowered "to acquire, hold, maintain, control, or dispose of a hospital or a public library, or any property for eleemosynary purposes or any interest therein". Pursuant to this provision the city many years ago established, and has ever since maintained, a small hospital which has long since proved to be inadequate. Accordingly, in the year 1938 the city, partly from funds provided from general taxation and partly by assistance from the Works Progress Administration, undertook to construct a new hospital building on property then owned by the city. The Works Progress Administration, however, in 1940 terminated its assistance and the city being without further funds, the structure was left incomplete. In 1942 the city authorities determined that in order to complete and equip the institution an additional sum of $200,000.00 would be necessary, and applied to the Reconstruction Finance Corporation for a loan for that purpose. That corporation has offered in writing to lend the sum of $160,000.00 toward the project, upon various conditions, including the requirement that the city from other sources furnish and first use toward the completion of the building the sum of $40,000.00. Not having available funds for that purpose, the city, by ordinance, submitted to its voters, as required by law, the question of issuing general obligation bonds of the city in the amount of $40,000.00, the proceeds of which should be used toward the completion of the hospital, but upon condition that the loan from the Reconstruction Finance Corporation should be obtained. These general obligation bonds were authorized by a vote of 1813 to 143; were approved as regular and valid by the Attorney General of the State, as required by law; and were sold to the Sinking Fund

Commission of the State, and the proceeds thereof are now being held in cash in a depository bank.

Certain questions of law arose from the fact of the previous and now proposed present investment of the city in the hospital enterprise, which the Reconstruction Finance Corporation required to be settled judicially before completing its loan. The plaintiff, therefore, as a resident, citizen and taxpayer of the city, on behalf of himself and all other persons in like situation, instituted this suit in chancery to enjon the expenditure of the proceeds of the $40,000.00 bond issue and the issuing or sale of the proposed revenue bonds, making the corporation, and members of the commission who constitute its governing body defendants. The bill of complaint charges both issues of bonds to be invalid. The grounds of invalidity pleaded may be indicated, though not fully stated, in the following summarization: (1) That the requirement that the city pay for its future use of the hospital constitutes a continuing, unascertained and unlimited debt and perpetual contract; (2) that revenue bonds for construction of a municipal public works cannot be issued by the city unless the entire project is financed from the proceeds thereof; (3) that from the fact that such revenue bonds are proposed to be made a lien on the completed hospital and to be paid for from the proceeds thereof, while the structure was partly paid for from taxes and general funds of the city, makes it a general debt of the city by which the total indebtedness of the city is increased beyond the constitutional and statutory amount permissible; (4) that the later bond ordinance purports to pledge the net revenues of the whole of the hospital to the payment of the revenue bonds, whereas only part of the hospital will be constructed from the proceeds thereof; (5) that the ordinance in question was not legally and regularly adopted; (6) that the revenue bonds, while in effect general indebtedness of the city, were not approved by the voters of the city; (7) that by statute the $40,000.00 is forbidden to be used in connection with the proceeds of revenue bonds for such

project; (8)    that the proposed statutory mortgage secur-
ing the revenue bonds is illegal because it covers property,
part of which was paid for by general taxation and other
funds of the city.

With the bill were filed as exhibits, certified copies of
the complete records of the municipal authorities show-
ing all their actions in detail relating to these bond issues.

The defendants demurred to this bill, assigning, in sub-
stance, the grounds that the bill on its face, together with
the exhibits filed therewith, shows as a matter of law
that none of the grounds assigned therein for attack on
the validity of the two issues of bonds, or either of them,
is well taken and that it is, therefore, legally insufficient.
The court sustained this demurrer and thereupon, on its
own motion, certified to this Court the points of law made
and the questions arising upon said demurrer, as follows:

"I.    Whether revenue bonds issued by author-
ity of the provisions of Chapter 68, Acts of the
Legislature, 1935, (Code, Article 4A of Chapter
8), constitute indebtedness of the City of Grafton
under the provisions of Article 8, Section 10 of
the Constitution of West Virginia?

"II.    Whether the proposed revenue bonds in
the sum of $160,000.00 will constitute a general
indebtedness of the City of Grafton and as such
be added to the total of all other indebtedness
owing by the said city to determine whether or
not the indebtedness of the City of Grafton ex-
ceeds the two and one-half percent (2½%) of the
value of the taxable property in said city as
shown by the last assessment for state and coun-
ty purposes next prior to the issuance of said
bonds under the provisions of Section 3, Article
1, Chapter 13 of the Code, or the five per cent
(5%) thereof under the provisions of Article 8,
Section 10 of the Constitution of West Virginia?

"III.    Does the fact that during the year 1938
and subsequent thereto about One Hundred
Thirty Thousand Dollars ($130,000.00) was ex-
pended, whereby the hospital was started, but
not completed, and was left in unusable and in-

complete condition, a part of which sum was expended by the City of Grafton from funds derived from general taxation and a part of which was obtained from the Works Progress Administration, prevent the said City from now issuing revenue bonds to obtain the money with which to complete said hospital, and from pledging for the purpose of retiring said bonds the entire net revenue to be derived from the hospital after completion?

"IV. Does the fact that the City of Grafton voted bonds in the amount of Forty Thousand Dollars ($40,000.00), which said bonds are to be repaid by direct levy upon, and taxation against, all property in the City of Grafton, and which said Forty Thousand Dollars ($40,000.00) is to be expended as part of the costs of completing said hospital, prevent the said City from issuing revenue bonds, and pledging for the purpose of retiring said revenue bonds all of the net revenues of said hospital, including the portion thereof which was constructed with taxpayers' money?

"V. Whether the fact that the City of Grafton is required to pay the regular schedule rates for any service and facilities rendered or furnished at its request, *which it obtains at said hospital, creates* for future years a debt against the City of Grafton, payable out of future taxes or general funds.

"VI. Does the fact, as stated in the Bill of Complaint, that the City proposes to use the proceeds of the general obligation tax bonds of $40,000.00, authorized by vote of the people, with the proceeds of the proposed revenue bonds in the sum of $160,000.00, invalidate either (a) the general obligation tax bonds of $40,000.00, or (b) the revenue bonds of $160,000.00, or (c) prevent the city from issuing the said revenue bonds of $160,000.00 and executing a statutory mortgage lien upon the said hospital and the revenue to be derived from the completed hospital?

"VII. In view of the fact that the election at which the voters authorized the issuance of the $40,000.00 tax bonds was held in the manner

alleged in the Bill of Complaint, and the validity of said bond issue was approved by the Attorney General and a copy of his approval published in the two newspapers of opposite politics, as alleged in said Bill of Complaint, and no petition to the Supreme Court of Appeals of West Virginia or to a Judge thereof was filed, praying that said action of the Attorney General be reversed or modified, are the said tax bonds valid?

"VIII.  Was the ordinance passed and adopted by the City of Grafton on the 14th day of January, 1943, entitled "Ordinance Authorizing the Issuance of $160,000.00 Principal Amount of Hospital Revenue Bonds of the City of Grafton, West Virginia, and the Rights of the Holders Thereof" (a) legally published and adopted, and (b) is said ordinance valid?

"IX.  Is the plaintiff and all other citizens similarly situate guilty of such laches as will estop the plaintiff from maintaining this suit?"

We readily answer questions I and II in the negative. *Casto* v. *Town of Ripley,* 114 W. Va. 668, 173 S. E. 886; *Brewer* v. *City of Point Pleasant,* 114 W. Va. 572, 172 S. E. 717; *Ritchie* v. *City Council of Harrisville,* 291 Mich. 415, 289 N. W. 197; *Cathcart* v. *City of Columbia,* 170 S. C. 362, 170 S. E. 435; 38 Am. Jur., Municipal Corporations, Section 473, pages 154, 155.  Equally obvious is the negative answer required to question V.  Both the ordinance of the city and Section 20 of Chapter 68, Acts of the Legislature, 1935, require the city to pay the same rates for services rendered to it by the hospital as other persons making use of its facilities; but the city is not required to make use of the hospital and, therefore, no debt against the city is established by the ordinance or the statute.  *Allison* v. *City of Chester,* 69 W. Va. 533, 72 S. E. 472, 37 L. R. A. (N. S.) 1042, Ann. Cas. 1913 B, 1174.  Question VII is answered in the affirmative. Code, 13-1-27. Also, we answer affirmatively question VIII.  The complete city records are before us.  The proceedings of the commissioners appear to have been kept fully and accurately. They disclose a substantial compliance, in all particulars,

including that relating to publication and notice, with the revenue bond statute and the city charter. No defect or omission in the commissioners' proceedings or record is pointed out or discovered. We hold, therefore, that the ordinance adopted January 14, 1943, has been legally published and adopted, and is valid. Question IX we answer in the negative. No ground of estoppel against the plaintiff and those for whom he sues is shown. Questions III, IV, and VI, however, require more extended discussion.

It is argued that the proceeds of the issue of general obligation bonds cannot be used in the construction of a hospital toward which the proceeds of revenue bonds are to be applied. This contention is based upon certain provisions of Chapter 68, Acts of the Legislature, 1935. Section 2 of the act has this sentence: "No obligation shall be incurred by the municipality in such construction, acquisition, extension or improvement, except such as is payable solely from the funds provided under the authority of this act". Section 4 provides that: "All such compensation and expense incurred in carrying out the provisions of this act shall be paid solely from funds provided under the authority of this act, and the board shall not exercise or carry out any authority or power herein given it so as to bind said board or said municipality beyond the extent to which money shall have been, or may be provided under the authority of this act". Section 10 contains this provision: "Nothing in this act contained shall be so construed as to authorize or permit any municipality to make any contract or incur any obligation of any kind or nature, except such as shall be payable solely from the funds provided under this act". And Section 11 provides: "The bonds shall contain a statement on their face that the municipality shall not be obligated to pay the same, or the interest thereon, except from the special fund derived from the net revenue of the works, or the pro rata part thereof, as provided for in section eight hereof". These provisions of the act might tend to sustain the plaintiff's contention, were it not for

this language in Section 25: "The authority herein given shall be in addition to and not in derogation of any power existing in any municipality under any constitutional, statutory or charter provisions which it may now have, or may hereafter acquire or adopt". This last quoted provision of the act clearly means that no part of the act shall operate to limit, restrict, modify or repeal any authority which the municipality had from any other source. Of course, the city, previous to the enactment of this statute, had the power to expend its own funds, or to raise funds through validly issued bonds for the purpose of building, or aiding in the construction of, a hospital. This power is by the very terms of Chapter 68, Acts of the Legislature, 1935, itself, untouched, survives in full, and prevails over any provision of that act which might otherwise be construed as conflicting therewith. We therefore hold that the $40,000.00 issue of bonds and the other funds which the city has available may be applied by it separately or in conjunction with the proceeds of the proposed revenue bonds for the building and completing of the hospital, anything in the act to the contrary notwithstanding. And, of course, since these proceeds can be legally so applied, they do not operate directly or indirectly in any way to obstruct or interfere with the use of the proceeds of the revenue bonds for the same purpose, or to affect the validity of the latter bonds.

The ordinance in question provides that the revenue bonds shall be a "statutory mortgage lien upon said Hospital". The validity of this provision is challenged. This feature of the ordinance is clearly based on the first sentence of Section 22 of the act which reads as follows: "In the event bonds issued hereunder are not secured by a trust indenture, provided for in Section 15 of this act, there shall be, and there is hereby, created a statutory mortgage lien upon such municipal public works acquired or constructed under the provisions of this act, which shall exist in favor of the holder of said bonds, and each of them, and to and in favor of the holder of the coupons

attached to said bonds, and such municipal public works shall remain subject to such statutory mortgage lien until payment in full of the principal and interest of said bonds". It is said, however, that the legislature cannot by such a statute authorize the creation of such a lien against municipal property. But the city of Grafton in owning and operating a hospital is acting, not in its governmental capacity, but in its proprietary or quasi-private character, and the property which it acquires for that purpose is not property devoted to a governmental use, but may be handled, controlled, and disposed of in any reasonable manner which the legislature may authorize. Section 19 of the Charter of the City of Grafton (Acts of the Legislature 1913, Chapter 79,) expressly provides that the municipality may "acquire, hold, maintain, control, or dispose of a hospital." It has been held that the power in a city to "dispose" of property includes the power to encumber or mortgage it. *Adams* v. *City of Rome,* 59 Ga. 765; *Middleton Savings Bank* v. *City of Dubuque,* 15 Ia. 394; *McAllister* v. *Plant,* 54 Miss. 106; *Platt* v. *Union Pac. R. R. Co.,* 99 U. S. 48, 25 L. Ed. 424; *Adams* v. *Memphis & L. R. R. Co.,* 2 Coldw. (Tenn) 645; *Palmer* v. *City of Albuquerque,* 19 N. M. 285, 142 P. 929, L. R. A. 1915 A, 1106; *City of Ft. Wayne* v. *Lake Shore & M. S. Ry. Co.,* 132 Ind. 558, 32 N. E. 215, 18 L. R. A. 367, 32 Am. St. Rep. 277; 3 Dillon on Municipal Corporations, 5th Ed., Section 996; 3 McQuillin on Municipal Corporations, 2nd Ed. Section 1246. It is not necessary for us to say that this provision of the charter alone justifies the lien in question, but it at least harmonizes clearly with the lien sought to be established. The quoted provision of Section 22 of the revenue bond act (Chapter 68, Acts of the Legislature, 1935) not only authorizes but expressly creates the lien in question. It might be contended that Section 22 limits the lien to only "such municipal public works acquired or constructed under the provisions of this act". We think, however, that this construction would defeat the whole intention and purpose of the statute. If the lien is to attach only to such part of the public works as shall have been con-

structed from the proceeds of the revenue bonds, then in case the bonds were issued for the enlargement or improvement of any such works, the lien would be only on an undetachable and probably unascertainable portion of the structure, and therefore would be utterly worthless. In the present case, for instance, the construction which shall now be made from the revenue bonds will necessarily be in the form of parts of the walls, floors, roofing, heating and lighting fixtures, plastering, and general interior finish, and such a lien, of course, would be an absurdity. Even in the case of a building wholly constructed from revenue funds upon land otherwise acquired, the lien would be on the building but not on the land and, therefore, of little or no value. If it were proposed to buy the land and construct a complete, whole building from the proceeds of the revenue bonds and the bonds were to be secured by nothing except a lien on the building and ground, it would still be inadequate to make the bonds salable, since no structure erected wholly from a bond issue would ever be considered adequate security for the bonds. In all cases to make the bonds commercially salable there must be some equity in the property on which there is a lien over and above the part produced by the bonds themselves. We think we may take note of these practical facts, and therefore know that bonds secured in this limited way would not be salable and therefore defeat the whole purpose of the act. We decline to make a construction of this statute which would lead to this futility, and this consideration alone would justify a construction of the statute which will tend to make the bonds in some degree salable, and which seems to be in accordance with the plain purpose of the act. This liberal construction, to the end that the act may be workable, is directly required by the statute itself, which says: "This act being necessary for the public health, safety and welfare, shall be liberally construed to effectuate the purposes thereof". Section 27, Chapter 68, Acts of the Legislature, 1935.

The construction of the act and ordinance which ex-

tends the statutory lien to the entire plant of the hospital also justifies and requires that we should hold that all of the net profits of the operation of the hospital as a whole shall be applied exclusively to the payment of the principal and interest of the bonds, rather than only to such part thereof as is the product of the proceeds of the revnue bonds invested in the plant.

We therefore answer questions III, IV, and VI in the negative.

Accordingly, the decree of the circuit court will be affirmed in full.

*Affirmed.*

LOVINS, JUDGE, concurring:

I agree that the ruling of the trial chancellor should be affirmed. But I am not in accord with the conclusion that a "statutory mortgage lien" attaches to land and buildings used as a hospital.

The trust indenture authorized by Section 15, Chapter 68, Acts of 1935, was not utilized by the city of Grafton, but in lieu thereof the municipal authorities passed an ordinance. Section 11 of the ordinance provides for the pledge of the net revenues and subsection J of Section 13 creates a statutory mortgage lien on the hospital, pursuant to Chapter 68 aforesaid. I think that the pledge of the net revenues is well within the power granted by the Legislature in Section 16, Chapter 68, Acts 1935. The power to pledge the entire net revenue of the hospital is not lessened nor limited by the fact that the cost of construction of the hospital will be paid from funds derived from various sources, including general taxation and the sale of direct obligation bonds.

But the statute is silent as to the exact property covered by the "statutory mortgage lien". On examination of Section 22 of Chapter 68, it is clear that the enforcement of the statutory mortgage lien is limited to collection of the revenues from the works (in this instance the hospital) and use thereof to discharge the principal and

interest of the bonds. If it were the legislative intent that the lien attach to the corpus of the property, why was the power to sell the property omitted from the statute? No power to sell the property is conferred by Chapter 68. On the contrary a lien on the works created by a trust indenture is expressly inhibited. The vague and uncertain language of Section 22 is not sufficient to |create a lien on the land and buildings, nor can such power be supplied by the passage of an ordinance by a municipal corporation.

I reach the conclusion that the statutory mortgage lien authorized by Section 22, Chapter 68, Acts of 1935, only attaches to the net revenue of the utility or works, and only affects the corpus of the property incidentally and so far as is necessary to produce that revenue.

KENNA, JUDGE, dissenting:

As is stated in the majority opinion, Section 10, Chapter 68, of the Acts of 1935, contains the following provision: "Nothing in this act contained shall be so construed as to authorize or permit any municipality to make any contract or incur any obligation of any kind or nature, except such as shall be payable solely from the funds provided under this act. Funds for the payment of the entire cost of the works shall be provided by the issuance of revenue bonds of the municipality, the principal and interest of which bonds shall be payable solely from the special fund herein provided for such payment, and said bonds shall not in any respect be a corporate indebtedness of such municipality".

I believe it was the clear purpose of the Legislature, backed by the realization that the financial affairs of West Virginia municipalities in general were then quite precarious, to prevent the further impairment of their general credit or fiscal policy by what would otherwise be the tempting provisions of the Act in question. To the exact contrary of that purpose this Court now holds that the City of Grafton may to a quite substantial extent issue its own general obligation bonds, use the proceeds

for a public work, and then qualify under Chapter 68 of the Acts of 1935, in direct contravention of its terms.

The position of the majority is, in its view, justified in permitting the use of the City's general credit due to the fact that Section 25 of the Act states that the authority conferred by the Act shall be in addition to, and not in derogation of, the existing powers of municipalities. Because municipalities then had the power to raise money by such general bond issues and spend it as they wished, the majority reasons that the Legislature could not restrict Chapter 68 of the Acts of 1935 to entirely self-liquidating projects without impairing the spending power of municipalities. Attention is again directed to Section 10 which prohibits, in financing projects therein provided for, obligations of any nature which shall not be payable solely from the funds provided under the Act, and goes further by stating that nothing in the Act *shall be construed* to authorize or permit additional obligations. This Court *does* so construe Section 25.

Furthermore, I think that the approach to the question should be more distinct than it is made in the Court's opinion. I understand that as to municipal revenue bonds, as distinguished from general obligation bonds, this proceeding was not brought for the purpose of testing the validity of existing bonds. Its purpose is to prevent the issuance of bonds under Chapter 68 of the Acts of 1935, so that we are not here concerned with the validity of outstanding revenue bonds, as I understand it, but with the approval of their contemplated issuance.

For the foregoing reasons, with deferential emphasis, I desire to dissent from Syllabus 4, and from the discussion of its subject matter in the majority opinion.