THE STATE OF WEST VIRGINIA *ex rel.*
THE BOARD OF GOVERNORS OF WEST
VIRGINIA UNIVERSITY

*v.*

D. PITT O'BRIEN, *as Secretary of State of the State* of WEST VIRGINIA

(No. 10843)

Submitted September 5, 1956.    Decided October 9, 1956.

*William G. Thompson, Douglas Bowers,* for relator.

*John G. Fox,* Attorney General, *Charles R. McElwee,* Assistant Attorney General, for respondent.

GIVEN, JUDGE:

In this original proceeding in mandamus the Board of Governors of West Virginia University, a corporation created by the Legislature, seeks a peremptory writ requiring the defendant, D. Pitt O'Brien, Secretary of State, to place the Great Seal of the State on and attest a certain bond in the amount of one thousand dollars, being one of a series of bonds aggregating ten million dollars proposed to be issued by the board of governors under authority of Chapter 7 of the 1956 Acts of the Legislature, Chapter 18, Article 11A, Supplement to Michie's 1955 Code, for purpose of financing the "costs of providing new buildings for the college of agriculture, the agricultural experiment station, the agricultural extension division, the college of engineering, the engineering experiment station, and the school of mines of West Virginia University". The matter is heard on the petition filed herein, the demurrer of defendant to the petition, certain depositions filed on behalf of petitioners, briefs and oral arguments. No question of fact is in dispute. The single contention of defendant raised by his demurrer is that the issuance of the bonds "would create a debt against the State of West Virginia, in contravention of Article X, Section 4, of the West Virginia Constitution", which reads: "No debt shall be contracted by this State, except to meet casual deficits in the revenue, to redeem a previous liability of the State, to suppress insurrection, repel invasion or defend the State in time of war; but the payment of any liability other than that for the ordinary expenses of the State, shall be equally distributed over a period of at least twenty years."

Section 1 of Chapter 7 of the Act mentioned vests in the board of governors authority to "issue revenue bonds of the state, not to exceed ten million dollars in principal amount thereof, to finance the costs of providing new buildings for the college of agriculture, the agricultural experiment station, the agricultural extension division, the college of engineering, the engineering experiment

station, and the school of mines of West Virginia University. The principal of and interest on such bonds shall be payable solely from the special nonrevolving fund herein provided for such payment * * *". Section 2 provides that "* * * On and after the first day of July, one thousand nine hundred fifty-seven, there shall be paid into such special fund all fees collected under the provisions of section one, article one-a, chapter twenty-five of this Code, from students at the university other than students in the schools of medicine, medical technology, dentistry, dental technology, nursing and pharmacy, except such fees as are required by that section to be paid into other special funds.

"The board of governors shall have authority to pledge all or such part of the revenue paid into the special university capital improvements fund as may be needed to meet the requirements of the sinking fund established in connection with any revenue bond issue authorized by this article, including a reserve fund for the payment of the principal of and interest on such revenue bond issue when other moneys in the sinking fund are insufficient therefor; and may provide in the resolution authorizing any issue of such bonds, and in any trust agreement made in connection therewith, for such priorities on the revenues paid into the special fund as may be necessary for the protection of the prior rights of the holders of bonds issued at different times under the provisions of this article* * *".

Section 3 relates to the manner in which such bonds may be authorized, the rights and duties of the bondholders, the form of the trust agreement authorized, and requires that such "bonds shall be signed by the governor, and by the president of the board of governors, under the great seal of the state, attested by the secretary of the state* * *." Section 4 authorizes the board to enter into an agreement with a trustee of the bondholders, setting forth the duties of the board in respect to "* * * the payment of the bonds, the fixing, establishing

and collecting of the fees hereinbefore referred to, the acquisition, construction, improvement, maintenance, operation, repair and insurance of such building or buildings, the conservation and application of all moneys, the security for moneys on hand or on deposit, and the rights and remedies of the trustee and the holders of the bonds, as may be agreed upon with the original purchasers of such bonds * * *", and Section 5 relates to the manner of the payment of the bonds by the board of governors from the special university capital improvements fund into a special sinking fund, and declares that such fund "is hereby pledged to and charged with the payment of the principal of the bonds of such issue and the interest thereon * * *".

Section 6 of the Act reads: "No provisions of this article shall be construed to authorize the board at any time or in any manner to pledge the credit or taxing power of the state, nor shall any of the obligations or debts created by the board under the authority herein granted be deemed to be obligations of the state."

Section 1 of Article 1a of Chapter 25 of the Code, as amended, mentioned in Section 2 of the Act of 1956, reads, in so far as material here: "The governing boards of state educational institutions shall fix enrollment, tuition, registration, and other fees for each semester or school term for the different classes or categories of students enrolling at the state educational institutions, and may include among such fees any one or more of the following: (1) Health service fees; (2) infirmary fees, and (3) student activities, recreational, athletic and extracurricular fees. All fees collected under (1), (2) and (3), shall be paid into special funds and shall be used only for the purposes for which the fees are collected * * *".

The board of governors, as disclosed by the resolution duly adopted by the board, authorizing the issuance of the bonds, found and declared that the construction and equipment of the proposed buildings "on land now owned by the State of West Virginia" were "necessary and es-

sential for the proper conduct, management and operation of West Virginia University"; that the estimated cost of such construction and equipment is ten million dollars; and that the revenue to be paid into the special fund, as above indicated, "on and after the first day of July, one thousand nine hundred fifty-seven, will be sufficient to pay the principal of and interest on the Revenue Bonds to be issued pursuant to this resolution as the same mature and become due, and all sinking fund, reserve and other payments provided for in this resolution".

The resolution authorizing the issuance of bonds provides that payment thereof and any interest thereon "will be paid solely from said revenue which on and after the first day of July, one thousand nine hundred fifty-seven, is required by said Article 11-A of Chapter 18 of the West Virginia Code (Michie 1955), as amended and supplemented, to be paid into the Special University Capital Improvements Fund, and shall not constitute a debt or obligation, general, special or otherwise, of the State of West Virginia." The proposed bond to which the defendant refused to affix the seal, exhibited with the petition, provides that "This bond does not constitute an indebtedness of the State of West Virginia within the meaning of any constitutional provisions or limitations".

As above noted, the only question before the Court is whether the Act of the Legislature authorizing the issuance of the bonds would create a debt within the meaning of the constitutional provision quoted above. Petitioner contends that since the bonds are payable out of a special fund not derived from public taxation, the indebtedness to be created by the issuance thereof can not constitute a debt within the meaning of the constitutional provision, while defendant contends that the issuance of the bonds will constitute such a debt, especially since part of the revenues required to be paid into such special fund will be derived from income to be received from existing facilities belonging to the State, which revenues have heretofore been applied to the maintenance or operation of the university, arguing that the requirement of the payment

of such funds into the special fund will, of necessity, require additional revenues to be raised by taxation for the purposes of maintaining and operating the university.

The question posed is not easily answered. Perhaps any answer may leave disturbing doubts and uncertainties in the opinions of many learned in constitutional law. Though doubt may exist, this Court must resolve the doubt in favor of the constitutionality of the statute, because of the great weight which should be accorded the action of a coordinate branch of the government. We believe, however, that numerous decisions of this Court, as well as Courts of many other jurisdictions having similar constitutional provisions, have pointed unwaveringly and unmistakably to the answer at which we have arrived, that the Act of the Legislature in question does not violate the pertinent constitutional provision.

In *Bates* v. *State Bridge Commission*, 109 W. Va. 186, 153 S. E. 305, the Act of the Legislature involved vested in the bridge commission the power to purchase or build bridges and to pay therefor with tolls derived from the bridges. The Court stated: "It is urged that the act violates the letter and spirit of section 4, article 10, of the Constitution * * * It is argued that the bonds authorized to be issued by the commission are debts of the state. Are these bonds a debt of the state within the meaning of said section 4, above quoted? The act expressly says in section 12 thereof that nothing therein shall be construed or interpreted to authorize the incurring of a state debt of any kind or nature. The payment of the bonds is to be made exclusively from the revenues derived from the bridges. No other revenues are applicable. Taxation for their redemption in any form cannot be imposed. The state cannot be compelled to pay them. The act itself is a part of the bonds as if written therein in extenso. The purchasers of the bonds are bound by the act, and cannot look to the state for payment. The bonds are not debts of the state within the meaning of the Constitution, above quoted * * *". See *State ex rel. State Road Commission* v. *O'Brien*, 140 W. Va. 114, 82 S. E. 2d 903;

*State ex rel. Knight* v. *Hanway, Mayor,* 136 W. Va. 219, 67 S. E. 2d 1; *State ex rel. Holbert* v. *Robinson, Mayor,* 134 W. Va. 524, 59 S. E. 2d 884; *Casto and Shinn* v. *Town of Ripley,* 114 W. Va. 668, 173 S. E. 886; *Brewer* v. *City of Point Pleasant,* 114 W. Va. 572, 172 S. E. 717.

In *Warden* v. *City of Grafton,* 125 W. Va. 658, 26 S. E. 2d 1, the Court considered the constitutionality of a statute authorizing the issuance of revenue bonds for the purpose of completing an addition to or enlargement of a municipally owned hospital constructed from funds derived from general taxation. It was contended that the indebtedness proposed to be created by the bonds would exceed the indebtedness of the municipality beyond the limit fixed by Section 8 of Article X of the State Constitution. As will be noticed, the indebtedness to be created was to be discharged in part from revenues to be received from existing facilities. The Court held that the debt to be created by the bond issue was not an "indebtedness" within the meaning of the constitutional provision.

In *State of West Virginia ex rel. Bibb* v. *Chambers, Mayor,* 138 W. Va. 701, 77 S. E. 2d 297, there was involved the validity of a proposed bond issue of the City of Beckley, the proceeds of which were to be used for off-street automobile parking facilities. The revenue to be received from "on-street" parking, existing facilities, as well as the revenue to be received from the facilities to be acquired or constructed, was to be pledged for the purpose of discharging the indebtedness to be created by the bond issue. It was held, part Point 3, Syl., that the city was "* * * empowered to pledge the revenues derived from on-street parking meters, unless such revenues are otherwise pledged, to help finance such off-street automobile parking facilities, including the payment of the principal and interest on revenue bonds issued for the purpose of financing the construction of the off-street automobile parking facilities." See *City of Charleston* v. *Southeastern Construction Co.,* 134 W. Va. 666, 64 S. E. 2d 676; *Conder* v. *University of Utah,* _____ Utah _____, 257 P. 2d 367; *State ex rel. Blume* v. *State Board of Edu-*

*cation of Montana,* 97 Mont. 371, 34 P. 2d 515; *State ex rel. Wilson* v. *State Board of Education of Montana,* 102 Mont. 165, 56 P. 2d 1079; *State ex rel. Fatzer* v. *Board of Regents of State of Kansas,* 167 Kan. 587, 207 P. 2d 373; *State* v. *Regents of University System of Georgia,* 179 Ga. 210, 175 S. E. 567; *Arthur* v. *Byrnes,* 224 S. C. 51, 77 S. E. 2d 311.

In 49 Am. Jur., States, Territories and Dependencies, Section 67, we find this statement: "Although the cases are not entirely in accord and dissenting opinions have been frequent, it has generally been held that an obligation payable from a special fund created by the imposition of fees, penalties, or excise taxes, and for the payment of which the general credit of the state is not pledged and resort may not be had to property taxation, is not a debt within the meaning of constitutional debt limitations * * *". Our cases are in complete accord. *State ex rel. State Road Commission* v. *O'Brien, supra; State ex rel. Bibb* v. *Chambers, Mayor, supra; State ex rel. Knight* v. *Hanway, Mayor, supra; Casto and Shinn* v. *Town of Ripley, supra; Bates* v. *Bridge Commission, supra.* See *State ex rel. Capitol Addition Building Commission* v. *Connelly,* 39 N. M. 312, 46 P. 2d 1097, 100 A. L. R. 878; *State ex rel. Richards* v. *Moorer,* 152 S. C. 455, 150 S. E. 269; *Gruen* v. *Tax Commission,* 35 Wash. 2d 1, 211 P. 2d 651; *Lyons* v. *Bottolfsen,* 61 Idaho 281, 101 P. 2d 1; *Moses* v. *Meier,* 148 Oregon 185, 35 P. 2d 981; *Application of Oklahoma Educational Television Authority,* _____ Okla. _____, 272 P. 2d 1027; *State ex rel. Wilson* v. *State Board of Education of Montana,* 102 Mont. 165, 56 P. 2d 1079.

In *Casto and Shinn* v. *Town of Ripley,* 114 W. Va. 668, 173 S. E. 886, this Court said: "Bonds issued by a government agency to finance a public utility and payable solely out of the revenues therefrom, do not create a debt within the meaning of a constitutional inhibition against the creation of public debt"; citing numerous authorities.

As above noticed, the resolution of the board of govern-

ors, the pertinent enactment of the Legislature, and the proposed bond exhibited with the petition, contain provisions to the effect that the debt to be created by the issuance of bonds should not be an obligation of the State and that the State should never be liable therefor. In *Brewer* v. *City of Point Pleasant,* 114 W. Va. 572, 172 S. E. 717, it was pointed out that the Act there being considered declared that the proposed bonds "shall not be a corporate indebtedness of such municipality", and that the Act expressly provided that "The bonds shall contain a statement on their face that the municipality shall not be obligated to pay the same or the interest thereon except from the special fund provided from the net revenues of the work".  The Court said: "* * * The provisions of the Act become a part of the contract between the municipality and the bondholders as effectually as if written verbatim in the bonds.  The bondholders are bound by their contract in this instance just as firmly as in any other legal contract.  Consequently we must hold that the bonds do not create a corporate indebtedness of the municipality. See *Bates* v. *Commission, supra,* pp. 188 and 189, where Judge Lively said: 'The great weight of decisions is that bonds of a state or political subdivision payable solely out of revenue derived from a utility of a public nature acquired by the money derived from the bonds do not create debts within the constitutional inhibition against the contraction of public debt.' * * *".  See *Casto and Shinn* v. *Town of Ripley, supra; State ex rel. Bibb* v. *Chambers, Mayor, supra.*

It is contended that since the proposed bond exhibited with the petition contains a promise by the State to make payment thereof, the same constituted a debt of the State within the meaning of Section 4 of Article X of the Constitution. We do not agree. The promise made is to pay solely out of the special fund to be created, not out of general or property tax revenues but from fees collected from students at the university, other than fees from certain designated schools.  No taxes or properties of the State are pledged or in any way made liable for the

payment of the bonds. As already made clear, a debt to be paid in such manner does not constitute a debt within the meaning of that constitutional provision. That provision, as previously pointed out, was intended to prohibit the creation of debts, by the State, required to be repaid by a public tax. Such a tax is levied against and constitutes an imposition against the taxpayer. The fees to be collected, and paid into the special fund from which payment of the bonds is to be made, are not such levies but are voluntary payments for benefits to be received from the university, and are subject to the control and disposition of the Legislature. See *State. ex rel. Board of Governors of West Virginia University, et al.* v. *Sims, Auditor,* 136 W. Va. 789, 68 S. E. 2d 489; and *State of West Virginia ex rel. The Board of Governors of West Virginia University* v. *Sims, Auditor,* 134 W. Va. 428, 59 S. E. 2d 705.

In the light of the decisions of this Court, as well as other authorities, we necessarily hold that the Act of the Legislature authorizing the Board of Governors of West Virginia University to issue the proposed bonds, described in the petition, and to provide for the payment thereof in the manner indicated, will not create a debt within the meaning of Section 4 of Article X of the State Constitution; and, consequently, that such legislation does not violate such constitutional provision. Since the statute mandatorily requires the Secretary of State to affix the Great Seal of the State to such bonds and to attest the same, a peremptory writ will issue as prayed for.

*Writ awarded.*