OPINION TO THE GOVERNOR.

JUNE 7, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

OPINION requested by Governor relative to proposal to consolidate pledges by board of trustees of state colleges in the financing of past and future construction at state university. Questions answered as indicated in opinion.

June 7, 1962

To His Excellency, John A. Notte, Jr.
        Governor of the State of Rhode Island
            and Providence Plantations

We have received from Your Excellency a request for our written opinion in accordance with the provisions of article XII, section 2, of amendments to the constitution of this state, upon certain questions of law which you propound in your letter as follows:

"(1) Would the modification of the pledge by the Board of Trustees of State Colleges of the net revenues of the existing federally financed auxiliary academic service enterprises at the University of Rhode Island so as to consolidate them to meet the consolidated debt

service of such enterprises be prohibited by Section 1 of Article XXXI of the Amendments to the Rhode Island Constitution?

"(2) Would a pledge by the Board of Trustees of State Colleges of the net income from an existing non-federally financed auxiliary academic service facility of the University to meet debt service on an existing or future federally financed auxiliary academic service facility create a state debt within the meaning of Section 1 of Article XXXI of the Amendments to the Rhode Island Constitution?

"(3) May the Board of Trustees of State Colleges finance the construction of the proposed addition to the Rhode Island Memorial Union (Student Union) Building at the University in the manner hereinabove proposed without colliding with Section 1 of Article XXXI of the Amendment to the Constitution of Rhode Island?"

This provision was formerly article IV, sec. 13, of the constitution of this state.

We have carefully read and considered the factual material furnished to us by Your Excellency in connection with the questions propounded. It appears therefrom that pursuant to the authority vested in it by G. L. 1956, §16-32-18 et seq., the board of trustees of state colleges has heretofore caused to be constructed certain housing and recreational facilities at the University of Rhode Island. They consist of a Memorial Union (student union) and five dormitories housing over one thousand students.

The construction of the Memorial Union was financed by contributions from students, the alumni and friends of the university. The housing facilities were financed by loans from the Federal Housing and Home Finance Agency created by an act of Congress, for which bonds were issued by the trustees. Each housing unit was the subject of a separate bond issue and the obligations so incurred were to be discharged by the application of the revenue received from students renting the particular unit involved.

Although the housing accommodations of the several units are comparable, the rentals charged students are not uniform because of the varying costs of construction resulting from site conditions. Since the interest and debt service charges payable to the federal agency must be met for the financing of each particular unit by the revenue received therefrom, obvious inequities result from the lack of uniformity in the amount of rent charged. In an effort to equalize room rental rates the board has requested the Federal Housing and Home Finance Agency to consent to a combining of the several loan agreements, as it says, "into one consolidated loan agreement, and in so doing, to utilize the revenue of the more revenue-productive project or projects to augment amortization of the less revenue-productive projects." It appears that the proposal has received tentative approval.

Furthermore, the board is planning to construct an addition to the Memorial Union and additional dormitories for men. Such construction is contemplated within the immediate future and application has been made to the Federal Housing and Home Finance Agency to include the financing thereof in the proposed consolidated loan. We are further informed that the finance agency has reserved the necessary funds pending a determination of the question of consolidation. Although the revenue hereafter received from the Memorial Union, which revenue comprises the proceeds from the book store, snack bar, bowling alleys and other recreational facilities, is to be allocated in redemption of the pledge contained in the proposed consolidated agreement, the Memorial Union addition is to be partially financed by applying thereto the sum of $100,000 which has been accumulated from students' fees and such proceeds as herein previously enumerated.

General laws 1956, §16-31-7, provides:

"The general assembly shall annually appropriate such sums as it deems necessary for the support and

maintenance of the University of Rhode Island and Rhode Island College of Education and the state officer charged with the duty of drawing orders upon the general treasurer is hereby authorized and directed to draw his orders upon the general treasurer for the payment of such sums or so much thereof as may be necessary upon the receipt by him of proper vouchers approved as said board may by rule provide. In each year the amount appropriated shall be made available for expenditure by the board of trustees of state colleges, in accordance with its consolidated budget, which shall include detailed budgets for the state colleges and for such other expenditures as the board may deem necessary and economical. The board of trustees of state colleges shall scrutinize and approve its consolidated budget and transmit it as a whole to the state budget officer provided for in §35-3-1. In constructing its budget the board of trustees of state colleges shall include estimated receipts from student fees, sales of institutional products and of discarded equipment, the operation of dormitories and auxiliary educational enterprises, other institutional sources, appropriations and grants from the federal government, and the income from endowment funds, if any. The board of trustees of state colleges shall have plenary power to determine what proportion of the state appropriation at its disposal shall be allotted to each state college."

It is clear from the foregoing that revenue from housing and recreational facilities, not otherwise encumbered, is to be available to the legislature when considering annual appropriations for the over-all operation of the university. The elimination of such revenue from consideration by the legislature would result in increased appropriations out of the general revenue of the state.

Moreover, as the more revenue-productive, existing facilities were amortized under the terms of outstanding agreements, the revenue therefrom would fall within the provisions of §16-31-7. It follows that the proposed consolidation would presently result in the pledging of the state's credit for the obligations therein assumed.

In *Opinion to the Governor,* 54 R. I. 45, former Governor Theodore Francis Green propounded to the justices of this court a similar question as follows:

> " 'Are the debts of Rhode Island Emergency Public Works Corporation to the Federal Government for public works under the provisions of the National Industrial Recovery Act, Act of June 16, 1933, Public No. 67, debts of the State within the meaning of Article IV, Section 13 of the Constitution?' "

We are not here concerned with the problem of whether the board of trustees of state colleges is a private or state agency so as to raise the question of whether the debt to be incurred is that of the state or others. Although G. L. 1956, chapters 31 and 32 of title 16, confer wide discretion and unusual exclusive authority on the board, we entertain no doubt concerning its status as an agency of the state. It acts on behalf thereof and the debts it contracts are debts of the state within the meaning of article XXXI, sec. 1, of the amendments.

We are concerned, however, with the amount of the debt to be assumed on behalf of the state by the proposed consolidation. It appears from the information furnished to Your Excellency by the chairman of the board that the sum to be borrowed for the construction of the addition to the Memorial Union approximates $2,000,000 while that for the men's dormitories is $1,700,000. Furthermore, the outstanding indebtedness on each of the existing facilities appears to be well in excess of the $50,000 limit provided in article XXXI, sec. 1, of the amendments. It is clear therefore that even if the proposed new construction were eliminated from the proposed consolidated agreement the consolidation of the existing obligations for the purpose of equalizing rentals charged students would inevitably result in the incurring of a prohibited debt as the more revenue-productive facilities were amortized and the revenue therefrom became general.

Although as previously noted the question considered in *Opinion to the Governor, supra,* related to another phase of the constitutional provision presently under consideration, it may be helpful to quote from page 50 thereof where the justices observed:

> "Unless the State pays the debts for which its property is pledged, to release the same from the lien created upon it through the Act of the corporation, the property will be lost to the State. In substance there is no difference between the obligation of the State to pay its direct debts and its duty to redeem its property pledged as security for money expended for its benefit. The will of the people, as expressed in their constitution, may not be defeated through the formation of a corporation to accomplish by indirection that which may not be done directly. The practical effect is the same whether such obligations arise through the pledge of the property of the State or by express promise. In either event the obligation must be paid with the money of the people, and incurrence of such obligation, unless consented to by them, is contrary to said section 13 of Article IV."

For these reasons our answers to your first two questions must be in the affirmative and in the negative as to the third.

FRANCIS B. CONDON

THOMAS H. ROBERTS

THOMAS J. PAOLINO

WILLIAM E. POWERS

G. FREDERICK FROST