## Richmond

ROBERT Y. BUTTON, ATTORNEY GENERAL OF VIRGINIA v. SIDNEY C. DAY, JR., COMPTROLLER OF VIRGINIA.

April 22, 1963.

Record No. 5581.

Present, All the Justices.

*Kenneth C. Patty, Assistant Attorney General (Robert Y. Button, Attorney General; R. D. McIlwaine, III, Assistant Attorney General, on brief), for the petitioner.*

*M. Wallace Moncure, Jr. (Moncure & Cabell, on brief), for the respondent.*

EGGLESTON, C. J., delivered the opinion of the court.

This is a proceeding brought under Code, § 8-714, to test the validity of certain amendments to §§ 23-19, as previously amended, and 23-21, 23-22 and 23-26, as enacted by Acts of Assembly of 1962, ch. 373, p. 517. The question presented is whether these latter sections

as amended, which authorize certain educational institutions to pledge certain revenues and receipts as security for bonds to be issued by them, violate § 184-a of the Constitution of Virginia. This latter section provides that, "No debt or liability, * * * shall be hereafter contracted by or in behalf of the State, unless such debt shall be authorized by law for some single purpose * * *. No such law shall take effect until it shall have been submitted to the people at a general election, * * *."

Code, § 23-14, as amended, provides that certain named educational institutions "are declared to be public bodies and constituted as governmental instrumentalities for the dissemination of education."

Section 23-18 authorizes each of these institutions, with the consent of the Governor, to borrow money for the acquisition or erection of a project and to make and issue its bonds as evidence of its indebtedness therefor.

Section 23-19 authorizes the board of such an institution to provide by resolution for the issuance of such bonds and to pledge certain of its revenues to secure their payment.

Prior to the 1962 amendment § 23-19, as previously amended, authorized the board by proper resolution to pledge "any or all revenues of the institution derived directly or indirectly from the project for the erection of which the bonds are issued to secure the payment of such bonds." As amended by Act of 1962, ch. 373, p. 517, the section authorizes the board to pledge "any or all revenues and receipts of the institution derived directly or indirectly from the project for the erection of which the bonds are issued and from any other existing facilities of the institution of the type described in subdivision (e) of § 23-15 to secure the payment of such bonds, * * * provided that the revenues and receipts of the institution so pledged derived directly or indirectly from *any other existing facilities* of the institution shall be derived from *increases in such revenues and receipts resulting from any increase in fees, rents or charges* for or in connection with the use, occupation, products and/or services of such other existing facilities or any services rendered therein." (Emphasis added.)

It will be observed that the effect of the amendment is to authorize the institutions to pledge as security for such obligations both the revenues and receipts derived directly or indirectly from the project for which the bonds are issued and any *increases in the revenues of other exisiting facilities* of the type described in Code, § 23-15(e).

Section 23-19(e), as amended, provides that, "The power and obligation of an institution to pay any bonds issued under this chapter

shall be limited. Such bonds shall be *payable only from the revenues and receipts pledged therefor pursuant to a resolution adopted under subdivision (d) of this section.* Such bonds shall in no event constitute an indebtedness of the institution, excepting to the extent of the collection of such revenues and receipts and such institution shall not be liable to pay such bonds or interest thereon from any other funds; * * * ." (Emphasis added.)

The amendments to §§ 23-21, 23-22 and 23-26 are merely consequential to the amendments to § 23-19 and need not be detailed.

Section 23-24 provides: "The bonds and other obligations of an institution shall not be in any way a debt of the State and shall not create or constitute any indebtedness or obligation of the State, either legal, moral or otherwise, nor shall they be payable out of any funds other than those of the institution and nothing in this chapter contained shall be construed to authorize any institution to incur any indebtedness on behalf of or in any way to obligate the State.".

Specifically, the question presented to us is whether the amendments which authorize these educational institutions to pledge as further security for the payment of bonds issued by them the increase in fees, rents or charges received from "other existing facilities" empowers such institutions to contract a debt or liability by or in behalf of the State within the prohibition of § 184-a of the Constitution.

In *Almond* v. *Gilmer*, 188 Va. 822, 51 S. E. 2d 272, we held that revenue bonds issued pursuant to the State Revenue Bond Act[1] to finance the costs of acquiring and constructing certain bridges and ferries and payable solely from the earnings derived from the tolls and charges for the use of these projects, imposed no debt or liability on the State within the meaning of § 184-a of the Constitution.

In reaching that conclusion we applied the well-recognized special fund doctrine that "obligations payable solely from a special fund derived from the revenue of the enterprise for which such obligations are issued do not constitute a bond or a debt within the meaning of any such constitutional limitation or provision." 188 Va., at page 844, 51 S. E. 2d, at page 281. This is so because these obligations are not secured by the general credit of the State or the issuing agency. See 43 Am. Jur., Public Securities, § 285, p. 500; 49 Am. Jur., States, *etc.,* § 67, p. 280; Annotation: 100 A. L. R. 900; 38 Am. Jur., Municipal Corporations, § 468, p. 150; 81 C. J. S., States, § 151, p. 1187. We applied the same principle in *Farquhar* v. *Board*

---

[1] Acts of 1940, ch. 399, p. 711; Code of 1950, § 33-227 *ff.*

*of Supervisors,* 196 Va. 54, 60, 61, 82 S. E. 2d 577, 582, upholding the validity of certain sanitary district bonds.

"Broadly speaking, a debt within a constitutional limitation on the power to incur indebtedness, is an obligation secured by the general faith and credit of the state." 81 C. J. S., States, § 149, p. 1183. "[I]f the political entity is made generally liable, then an indebtedness is created within the debt limitations of the Constitution." *Farquhar* v. *Board of Supervisors, supra,* 196 Va., at page 61, 82 S. E. 2d, at page 582.

Conversely, if the obligation is to be discharged solely from a special fund and the faith and credit of the State are not involved, it is not a debt within this constitutional sense.

It is true that in *Almond* v. *Gilmer, supra,* and *Farquhar* v. *Board of Supervisors, supra,* the obligations were to be paid solely from revenues derived from the particular project or projects which were constructed or purchased with the funds derived from the proceeds of the sale of the obligations, and in the case now before us the obligations are to be payable partly from a similar source and partly from the increases in revenues from other existing projects. But the underlying controlling principle is the same. In each case the obligations are to be payable solely from a special fund. In none is the general credit of the State pledged for the payment of the obligations, nor may the holders of such obligations look to the State's general revenues for payment. Indeed, § 23-24, *supra,* expressly provides that the obligations with which we are concerned "shall not be in any way a debt of the State and shall not create or constitute any indebtedness or obligation of the State."

While there are holdings to the contrary the decided weight of authority is that statutory provisions permitting the pledging of other revenues than those derived from the particular project being constructed or acquired do not violate constitutional provisions of limitation as to a state debt. See Annotations: 72 A. L. R. 695, 96 A. L. R. 1393, 146 A. L. R. 344. Among the cases so holding are, *State ex rel. Board of Governors, etc.* v. *O'Brien,* 142 W. Va. 88, 94 S. E. 2d 446; *Fanning* v. *University of Minnesota,* 183 Minn. 222, 236 N. W. 217; *State* v. *Regents of University System,* 179 Ga. 210, 175 S. E. 567; *Guthrie* v. *City of Mesa,* 47 Ariz. 336, 56 P. 2d 655; *State* v. *State Board of Education,* 102 Mont. 165, 56 P. 2d 1079; *State* v. *Board of Regents,* 167 Kan. 587, 207 P. 2d 373; *Conder* v. *University of Utah,* 123 Utah 182, 257 P. 2d 367.

Among those taking the opposite view are, *Boe* v. *Foss*, 76 S. D. 295, 77 N. W. 2d 1; *Wilder* v. *Murphy*, 56 N. D. 436, 218 N. W. 156; *Boswell* v. *State*, 181 Okla. 435, 74 P. 2d 940; *Opinion to the Governor*, R. I. , 181 A. 2d 618; *Opinion of the Justices*, 266 Ala. 78, 93 So. 2d 923.

We have been pointed to no case, nor have we found any, involving the validity of a provision authorizing the pledging of the increases in the revenues of an existing project, as is the situation here. But if no debt is created by a pledging of all of the existing revenues of a project, we perceive no reason why one is created by the pledging of the increases in, or a portion of, such revenues. Plainly both are within the special fund doctrine which we have recognized and applied and to which we now adhere.

For these reasons we hold that the Act of Assembly of 1962, ch. 373, p. 517, amending and re-enacting §§ 23-19, as amended, and 23-21, 23-22 and 23-26 of the Code, does not violate § 184-a of the Constitution of Virginia.

Accordingly, the writ of mandamus prayed for will be awarded.

*Writ awarded.*